**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

GRUPO PETROTEMEX, S.A. DE C.V. and
DAK AMERICAS LLC,

        Plaintiffs,

v.

POLYMETRIX AG,

        Defendant.
_____/

Civil Action No. 16-cv-02401 SRN-JSM

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**

Plaintiffs Grupo Petrotemex, S.A. De C.V. and DAK Americas LLC ("GPT/DAK") respectfully submit this opposition to Polymetrix AG's ("Polymetrix") Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1).

## I.  INTRODUCTION

The Court should deny Polymetrix's belated motion to dismiss the complaint under Rule 12(b)(1) because the motion is contrary to well-settled law.  Unlike typical challenges to subject matter jurisdiction in patent cases involving, *e.g.*, issues of ownership and/or the plaintiff's lack of standing to bring suit, Polymetrix has asserted here—***in direct contradiction to controlling Federal Circuit authority and without citing a single supporting case on point***—that the Court lacks subject matter jurisdiction because there has allegedly been no importation of polyethylene terephthalate ("PET") into the U.S. by its customer, Indorama Ventures Poland Sp. z o.o. (hereinafter, "Indorama Poland").  As explained below, however, the Federal Circuit already squarely

- 1 -

addressed this exact issue in a 2008 decision that is directly on point, holding that it is improper as a matter of law to treat the question of whether accused infringing products are imported into the U.S. as an issue impacting subject matter jurisdiction. *Litecubes, LLC v. N. Light Prods.,* 523 F.3d 1353, 1357 (Fed. Cir. 2008). Because Polymetrix failed to mention—let alone distinguish—the Federal Circuit's *Litecubes* decision, which is controlling and directly adverse authority, as discussed below, counsel for GPT/DAK provided a courtesy copy to counsel for Polymetrix on March 27, 2018, together with a letter requesting that Polymetrix withdraw the instant motion or else explain why the motion is not frivolous in light of such authority. Polymetrix failed to reply as of the filing of this opposition.

Moreover, GPT/DAK disputes Polymetrix's assertion of no importation here because Polymetrix refers in its motion only to importation by "ocean ship" and ignores importation of PET into the U.S. by *air*. Indeed, the very same subscription database Polymetrix relies on shows shipments of PET from Poland entering the U.S. through the Seattle-Tacoma International Airport in Washington and Logan International Airport in Massachusetts in 2016, and GPT/DAK have served a subpoena on U.S. Customs and Border Protection ("CBP") for additional information regarding such importation.

Ironically, while Polymetrix baselessly claims that GPT/DAK are seeking an "unconstitutional advisory opinion," in reality it is Polymetrix that is seeking such an advisory opinion by asserting that no justiciable controversy exists with respect to unaccepted offers to sell the EcoSphere™ technology in the U.S. Polymetrix acknowledges (as it must) that GPT/DAK did not allege direct infringement by

Polymetrix under 35 U.S.C. § 271(a) in the complaint. Thus, Polymetrix's argument with respect to unaccepted offers for sale in the U.S. is not ripe for the Court's consideration. Nevertheless, the case law cited by Polymetrix in support of its argument is inapposite.

Finally, when it responded to the complaint in 2016 via its answer (Dkt. 16 at ¶ 5) and amended answer (Dkt. 43 at ¶ 5), Polymetrix unequivocally admitted twice that the Court has subject matter jurisdiction over this case. Although subject matter jurisdiction cannot be conferred by consent, Polymetrix cannot take contrary positions on this issue. Both GPT/DAK and the Court are certainly entitled to know whether any bona fide challenge to jurisdiction exists, and if Polymetrix's position regarding subject matter jurisdiction has changed, then it should have first moved for leave to file a second amended answer. Waiting nearly two years to file a Rule 12(b)(1) motion, during which time GPT/DAK have filed two motions to compel, and settlement negotiations have stalled, is inconsistent with a bona fide challenge to jurisdiction, and smacks of a litigation tactic to further delay progress in this case. Accordingly, the motion must be denied.

## II.   STATEMENT OF FACTS

Polymetrix's motion contains several misstatements of fact and gross mischaracterizations that require correction. For example, Polymetrix repeatedly makes baseless accusations regarding what GPT/DAK supposedly knew or did not know when filing the complaint, such as allegations that it "was unknown to GPT/DAK at the time they filed their Complaint [that "[t]he Poland plant is the only EcoSphere™ plant in commercial operation in the world"] and they only learned of its existence after this

lawsuit was filed when Polymetrix's counsel informed them of its existence and the fact that there were no EcoSphere™ plants built or operating in the U.S." (Dkt. 139 at 2). Polymetrix even goes so far as to surmise that "if truth be told by GPT/DAK, the sole impetus for filing their Complaint was a subjective fear of a potential future harm based upon the hypothetical and speculative importation into the U.S. of PET manufactured at the China plant whenever it commences commercial operation." (*Id.* at 3). Not surprisingly, these assertions are totally unsupported by Polymetrix. They are also belied by GPT/DAK's complaint, which again does not allege direct infringement by Polymetrix under § 271(a) or even so much as mention any China plant whatsoever.

In any event, GPT/DAK has noticed the depositions of Martin Müller (Chief Executive Officer of Polymetrix) and Andreas Christel (Direct of Process Technology at Polymetrix), both of whom submitted declarations in support of the instant motion, in order to test and better understand their testimony. (Schweibenz Decl. at ¶¶ 2-3).

Further, during the parties' meet-and-confer teleconference on March 7, 2018 regarding the instant motion, counsel for GPT/DAK specifically asked counsel for Polymetrix to provide any supporting legal authority. (*Id.* at ¶ 4). Counsel for Polymetrix did not indicate that any contrary controlling authority exists, and further, specifically referred only to the Supreme Court's 2007 *MedImmune* decision as supporting authority. (*Id.*) On March 27, 2018, counsel for GPT/DAK advised counsel for Polymetrix of directly adverse controlling authority in *Litecubes*, and provided a courtesy copy for reference. (*Id.* at ¶ 5). Counsel for GPT/DAK further requested that Polymetrix withdraw the instant motion, or else explain why the motion is not frivolous

in light of such authority. Polymetrix failed to reply as of the filing of this opposition. (*Id.*)

### III.  ARGUMENT

#### A.  It is Well-Settled that No Jurisdictional Issue is Present Here

Polymetrix's entire argument that the Court lacks subject matter jurisdiction over this suit because GPT/DAK allegedly cannot prove that Polymetrix imported PET made by an infringing process into the U.S. is contrary to well-settled law. In *Litecubes*, the Federal Circuit squarely addressed this exact issue. In that case, following a jury verdict of patent and copyright infringement, the defendant filed a motion to dismiss for lack of subject matter jurisdiction on the grounds that it neither sold nor imported the allegedly infringing products into the U.S. The district court denied the motion on the grounds that the defendant imported the goods into the U.S., and the defendant appealed. Noting its independent obligation to properly determine its own jurisdiction, the Federal Circuit requested that the parties address the following issue at oral argument:

> Whether failing to establish that an alleged infringer "makes, uses, offers to sell, or sells any patented invention, *within the United States* or imports *into the United States* any patented invention" is sufficient to divest the federal courts of subject matter jurisdiction over a patent infringement action, or instead whether the location of the allegedly infringing activity is a factual element of the claim which must be proven to show patent infringement but which does not affect the subject matter jurisdiction of the federal courts.

523 F.3d at 1359 (emphasis in original).

In a lengthy discussion, the Federal Circuit affirmed the district court's denial of the motion to dismiss, but on different grounds. Specifically, the Federal Circuit found that "[t]he district court erred in treating the issue of whether the goods had been

imported into the United States as an issue impacting its subject matter jurisdiction." *Id.* at 1357. "A plaintiff must prove that allegedly infringing activity took place in the United States to prevail on claims of patent or copyright infringement, but as with any other element of the claims, failure to do so does not divest the federal courts of subject matter jurisdiction over the action." *Id.*

The Federal Circuit in *Litecubes* discussed, *inter alia*, the Supreme Court's unanimous opinion in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), which addressed the distinction between a statutory limitation that is truly jurisdictional and one that is simply an element of a claim that must be established on the merits. In that case, the Supreme Court considered whether Congress, by permitting Title VII discrimination suits only against employers with more than fifteen employees, had intended to limit the subject matter jurisdiction of the federal courts or merely to list one element of a Title VII cause of action. *Id.* at 503. Noting that subject matter jurisdiction and "the essential ingredients of a federal claim for relief" are "sometimes confused or conflated," *id.* (internal quotation marks omitted), the Court faulted the many "drive-by jurisdictional rulings" that label the elements of a cause of action as "jurisdictional" without attention either to indicia of Congressional intent or to the consequences of such a ruling. *Id.* at 511 (internal quotation marks omitted). Attempting to clarify this area of the law, the Supreme Court announced a "readily administrable bright line" test for determining when a statutory requirement is jurisdictional:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress

> does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16 (internal quotation marks, citation, and footnote omitted). Applying that test to the case before it, the Supreme Court held in *Arbaugh* that the threshold number of employees for application of Title VII was an element of plaintiff's claim for relief, not a jurisdictional issue. *Id.* at 516.

In patent cases, as the Federal Circuit clearly articulated in *Litecubes*, "Congress has ***not*** clearly stated in 35 U.S.C. § 271 or in any other statute that § 271's requirement that the infringing act happen within the United States is a threshold jurisdictional requirement as opposed to an element of the claim." 523 F.3d at 1363 (emphasis added). "To the contrary, the statute, which creates liability for patent infringement on 'whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore' in no way distinguishes the territorial limitation from any of the other elements necessary to show infringement." *Id; see also Federal-Mogul World Wide v. Mahle GmbH*, 2011 U.S. Dist. LEXIS 110013, at *26-28 (E.D. Mich. Sept. 27, 2011) (following *Litecubes* and denying a Rule 12(b)(1) motion to dismiss an amended complaint alleging, *inter alia*, induced and contributory infringement).

Because *Litecubes* is directly on point and controlling, it is frankly unacceptable that Polymetrix did not attempt to distinguish—or even mention—this case in its motion. Not surprisingly, Polymetrix also failed to provide any supporting authority on point. During the parties' meet and confer on the instant motion, counsel for GPT/DAK

specifically requested that Polymetrix provide any supporting authority so that GPT/DAK could properly consider the legal bases for Polymetrix's position, to which counsel for Polymetrix responded by initially refusing, but ultimately referring specifically only to the Supreme Court's 2007 *MedImmune* decision. (Schweibenz Decl. at ¶ 4). *MedImmune*, however, held that a licensee is not required to terminate or materially breach its license agreement in order to bring a declaratory judgement action challenging the validity or infringement of the licensed patent, and more generally described the standard for determining whether a justiciable case or controversy exists between the parties in a declaratory judgement action. 549 U.S. 118, 127 (2007). *MedImmune* and the other authority cited by Polymetrix in its motion say absolutely nothing about whether the alleged absence of importation is sufficient to divest federal courts of subject matter jurisdiction in patent cases. Accordingly, counsel for GPT/DAK informed counsel for Polymetrix during the meet and confer that the types of arguments Polymetrix planned to raise in its motion are more akin to a failure to state a claim under Rule 12(b)(6), which Polymetrix already waived its right to pursue by failing to timely file such a motion. (Schweibenz Decl. at ¶ 4). Indeed, Polymetrix's theory based on generalities set forth in *MedImmune* and similar cases is not only directly contrary to the Federal Circuit's holding in *Litecubes*, but it is in effect asking the Court for exactly the kind of "drive-by jurisdictional ruling" that the Supreme Court cautioned against in *Arbaugh*.

In light of the foregoing, the instant motion must be denied, and in fact never should have been filed by Polymetrix in the first place.

Nevertheless, even if the Court were to consider the case at bar to be one in which the merits of GPT/DAK's claims (*i.e.*, ultimate importation of a product made by an infringing process for purposes of indirect infringement) are inextricably bound with subject matter jurisdiction (which they clearly are not, as explained by the Federal Circuit in *Litecubes*), Polymetrix's motion should still be denied.  Courts have widely recognized that where the question of jurisdiction is intertwined with the merits of the case, the proper course of action is to reserve for a later proceeding both the jurisdictional question, *see, e.g., Montez v. Dep't of Navy,* 392 F.3d 147, 150 (5th Cir. 2004) (noting that where there is an "intertwined attack" on jurisdiction and merits, "resolution of the jurisdictional issue on a 12(b)(1) motion [is] improper"), and the merits of the case.  *See, e.g., Continental Cas. Co. v. Dep't of Highways, State of La.,* 379 F.2d 673, 675 (5th Cir. 1967) ("[W]hen the issue of the jurisdictional amount is intertwined with the merits of the case, courts should be careful not to decide the merits, under the guise of determining jurisdiction, without the ordinary incidents of a trial."); *see also Osborn v. U.S.*, 918 F.2d 724, 730 (8th Cir. 1990) (noting that a federal court should not decide a factual dispute over jurisdiction if the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue"); *Estate of Boeckmann v. Sprint/United Mgmt. Co.*, 2018 U.S. Dist. LEXIS 30399, at *3 (D. Minn. Feb. 26, 2018) (In a case "where the issue of jurisdiction and the substantive merits of the underlying claim are so closely intertwined," the Court was "reluctant to resolve the numerous disputed facts that the undeveloped record presents.").  The reason for postponing the jurisdictional question is plain—"[t]o the extent that the jurisdictional question and the

merits are intertwined, a plaintiff who has yet to undertake discovery almost certainly has not had the chance to fully ascertain the jurisdictional facts." *Edinburgh v. Am. Sec. Ins. Co.*, 2010 U.S. Dist. LEXIS 110634, at *18-19 (E.D. La. Nov. 29, 2010).  Here, GPT/DAK is pursuing party discovery from Polymetrix after a litigation stay pending potential settlement was lifted, and GPT/DAK also served a subpoena on CBP seeking third-party discovery regarding the infringing importation of PET into the U.S. from Poland.  Accordingly, for this additional reason, Polymetrix's motion should be denied.

### B. A Justiciable Controversy Exists Under Article III

Aside from a flawed legal theory based on *MedImmune*[1] that ignores controlling Federal Circuit precedent, Polymetrix's motion is premised almost entirely on the alleged absence of importation of PET into the U.S. by its customer, Indorama Poland.[2]  Indeed,

---

[1] In a bizarre twist of facts and logic, Polymetrix claims that "GPT/DAK is effectively seeking a declaratory judgment as a remedy, especially with respect to the Poland and China plants since there has been no importation of PET from either of these plants to date." (Dkt. 139 at 13). Nowhere in the complaint, however, do GPT/DAK seek a declaratory judgment or even refer to 28 U.S.C. § 2201. Polymetrix's fundamental misunderstanding of the posture of this case is further underscored by its purported reliance on *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 2017 U.S. Dist. LEXIS 71619 (D. Minn. Mar. 29, 2017) (J. Nelson).  As the Court is well aware, that case involved an actual declaratory judgment claim by the accused infringers that their design-around prototype candle, which did not exist until at least nine months after their declaratory judgment claim was filed, did not infringe the patents-in-suit. *Id.* at *24-27. Accordingly, the facts in *Luminara* in no way resemble the present case.

[2] Polymetrix protests that it was "legally entitled to provide equipment and engineering used in the construction of the EcoSphere™ plants in Poland and China because those processes are located and operated outside of the U.S." and that "Polymetrix should not be hailed into court in the U.S. simply because GPT/DAK fears that someday PET may be imported into the U.S. from one of these plants." (Dkt. 139 at 4) (emphasis in original).  Here again, Polymetrix misunderstands both the law and GPT/DAK's complaint.  While "purely extraterritorial conduct cannot constitute *direct* infringement

Polymetrix dutifully cites to "publicly available shipping database data" supposedly showing that "there has been no exportation of PET manufactured at the Poland plant into the U.S. since it began commercial operation in 2014." (Dkt. 139 at 9; Dkt. 142 at ¶ 2). Polymetrix's database search, however, is limited to "ocean ship manifest data." (Dkt. 142 at ¶ 2). Polymetrix apparently failed to search for or even consider shipments of PET into the U.S. by *air*. The very same publicly available subscription database (Datamyne) Polymetrix relies on shows shipments of PET from Poland into the U.S. through both the Seattle-Tacoma International Airport in Washington and Logan International Airport in Massachusetts in 2016. (Schweibenz Decl. at ¶¶ 6-7). The identity of the shipper, importer, exporter, and/or consignee for these shipments does not appear to be publicly available, however. Thus, GPT/DAK served a third-party subpoena on CBP seeking this and other information relating to such shipments of PET from Poland into the U.S. (*Id.* at ¶ 8). Based on this factual dispute alone, Polymetrix's motion must be denied.

Polymetrix also argues that there is no justiciable controversy over unaccepted offers to sell the EcoSphere™ technology in the U.S. (Dkt. 139 at 27-30). This argument is unavailing for two reasons. First, GPT/DAK did not allege direct infringement by Polymetrix under 35 U.S.C. § 271(a) in the complaint Polymetrix seeks to dismiss. Rather, the complaint asserts only induced and contributory infringement against Polymetrix under §§ 271(b) and (c). (Dkt. 1 at ¶¶ 26-43). Polymetrix is thus

---

of a U.S. patent … § 271(a) is not the only provision of § 271." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302 (Fed. Cir. 2012). "In particular, § 271(b), which defines infringement by inducement, contains no such territorial proscription." *Id.* GPT/DAK's complaint alleges infringement under §§ 271(b) and (c), not under § 271(a). (Dkt. 1 at ¶¶ 26-43).

requesting an unconstitutional advisory opinion that if and when GPT/DAK amend the complaint to allege direct infringement by Polymetrix through offers to sell the EcoSphere™ technology in the U.S., such offers to sell equipment for performing a patented process cannot constitute direct infringement as a matter of law.[3]  As Polymetrix correctly explains in its motion, this Court cannot give an opinion advising what the law would be on a hypothetical state of facts.  For this reason, Polymetrix's arguments in connection with unaccepted offers for sale should be disregarded by the Court as simply unripe.

Second, Polymetrix relies on inapposite cases which hold merely that the sale of equipment to perform a patented process cannot be the ***sole basis*** for finding ***direct infringement*** under § 271(a).  Although GPT/DAK do not dispute the continued viability of *Joy Techs. v. Flakt, Inc.*, 6 F.3d 770 (Fed. Cir. 1993), upon which Polymetrix primarily relies, that case was decided before the 1994 amendments to the statute which added "offers to sell" as a new basis for direct infringement liability, thus contemplating liability for acts that occur prior to the actual use of the patented invention.  Moreover, *Joy Techs.* simply states that "[a] method claim is *directly* infringed only by one practicing the patented method," *id.* at 775 (emphasis in original), and does not address, for example, contributory infringement under § 271(c) for selling a product especially designed to practice a patented method.  In fact, the Federal Circuit in dicta specifically

---

[3]  GPT/DAK reserve their right to seek permission from the Court to file a motion to amend their complaint after receiving further party discovery from Polymetrix and third-party discovery from several outstanding subpoenas served by GPT/DAK both before and after the Court stayed this litigation pending unsuccessful settlement discussions between the parties.

contemplated that the sale of equipment to perform a patented process may give rise to liability for contributory infringement:

> That the sale of equipment to perform a process is not a direct infringement of the process within the meaning of section 271(a) is further highlighted by 35 U.S.C. § 271(c) (1988) … which provides in pertinent part that such a sale may be a contributory infringement. To hold that the sale of equipment which performs a patented process is itself a direct infringement would make that portion of section 271(c) relating to the sale of an apparatus for use in practicing a patented process meaningless.

*Id.* at 774.

Moreover, *Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325 (Fed. Cir. 2008), upon which Polymetrix also relies, actually strongly supports GPT/DAK's position. The Federal Circuit in that case—decided after the 1994 amendments to the statute adding "offers to sell" as a new basis for direct infringement liability—specifically declined to "determine whether a process may ever be sold so as to give rise to liability under § 271(a)" and ruled only that the sale or offer for sale of computer software containing instructions to perform the patented method was insufficient in that case to give rise to liability for direct infringement. *Id.* at 1334-36. The court then went on to analyze the defendant's liability for induced and contributory infringement under §§ 271(b) and (c). The court noted that the language of § 271(c) "incorporates the core notion that one who sells a component especially designed for use in a patented invention may be liable as a contributory infringer," and that the legislative history makes clear that "[o]ne who makes a special device constituting the heart of a patented machine and supplies to others with directions (specific or implied) to complete the machine is obviously appropriating the benefit of the patented invention." *Id.* at 1337. The Court

acknowledged that "the fundamental purpose of contributory infringement liability" is to permit the enforcement of rights in a protected work, even where it is impossible to pursue the direct infringers. *Id.* at 1338. "[T]he only practical alternative [is] to go against the distributor … for secondary liability." *Id.* (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-30 (2005)). With respect to inducement, the Federal Circuit found that the district court erred in discounting certain evidence of defendant's intent that its accused disk drives be used to infringe the method claims of the asserted patents. *Id.* at 1339-43. Thus, even though there was no finding of direct infringement in *Ricoh*, the Federal Circuit reversed the lower court's grant of summary judgment of no induced or contributory infringement and remanded for a determination of whether a material issue of fact exists regarding the defendant's specific intent to induce infringement, and whether the defendant's products had substantial non-infringing uses. In other words, the *Ricoh* case—which was decided after the 1994 amendments to the statute adding "offers to sell" as a new basis for direct infringement liability—supports the proposition that a sale or offer for sale of equipment that performs a patented process may, in fact, give rise to liability for indirect infringement.

Likewise, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), cited by Polymetrix, did not involve claims of indirect infringement. Further, as Polymetrix concedes, the Federal Circuit in that case explicitly stated that it "need not and do[es] not hold that method claims may not be infringed under the 'sells' and 'offers to sell' prongs of section 271(a)." *Id.* at 1320-21.

Accordingly, for the above-stated reasons, a justiciable controversy exists between the parties, and the authority relied on by Polymetrix to the contrary is inapposite.

### C. Polymetrix Already Admitted Twice that the Court has Subject Matter Jurisdiction

Polymetrix unequivocally conceded that the Court has subject matter jurisdiction over this case when it filed its answer to the complaint almost two years ago (Dkt. 16 at ¶ 5), and when it filed its amended answer thereafter (Dkt. 43 at ¶ 5). If Polymetrix seriously believes that the Court does not have subject matter jurisdiction over this case, then it should have moved to further amend its answer long before filing the instant motion. "[A]fter all, although subject matter jurisdiction cannot be conferred by consent, both opposing counsel and th[e] Court are entitled to know whether any bona fide challenge to jurisdiction exists." *Biggs v. Winpack Portion Packaging, Inc.*, 1995 U.S. Dist. LEXIS 15520, at *2 (N.D. Ill. Oct. 13, 1995) (criticizing defendant for failing to admit or deny subject matter jurisdiction in its answer). There is no bona fide challenge to jurisdiction here because (1) controlling Federal Circuit authority in *Litecubes* clearly holds that the question of whether accused infringing products are imported into the U.S. is not a jurisdictional issue, and (2) a justiciable controversy clearly exists between the parties for at least the reasons set forth above.[4] The instant motion is nothing more than a

---

[4] As counsel for GPT/DAK indicated to counsel for Polymetrix during the parties' meet and confer on the present motion, all of Polymetrix's assertions regarding the sufficiency of the allegations in the complaint are in effect arguments that GPT/DAK failed to state a claim for which relief should be granted. (Schweibenz Decl. at § 4). Accordingly, any such arguments should have been made "before pleading" in a motion to dismiss under Rule 12(b)(6), and thus have been waived by Polymetrix. *See* Fed. R. Civ. P. 12(b).

doomed Hail Mary attempt by Polymetrix to further delay this case and shirk its discovery obligations[5] now that a litigation stay has been lifted.[6]

## IV. CONCLUSION

For the reasons set forth above, Polymetrix's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) should be denied.

---

[5] Polymetrix's dilatory approach to complying with its discovery obligations is exemplified by its recent response to GPT/DAK's second motion to compel. (Dkt. 160). Indeed, despite the serious allegations in GPT/DAK's pending motion to compel that Polymetrix has, *inter alia*, failed to comply with the Federal Rules of Civil Procedure and the Court's orders and directives, Polymetrix did not even bother to meaningfully respond to the motion, but rather "reserve[d] its right" to submit a "substantive" opposition at some unidentified point in the future. *Id.* at 2-3.

[6] While not formally requesting that sanctions be ordered against Polymetrix at this time, GPT/DAK would not oppose the Court's *sua sponte* issuance of an order to show cause why Polymetrix should not be sanctioned for filing the instant motion, which is clearly lacking in terms of factual and legal support and therefore objectively baseless. *See, e.g., Scroggin v. Credit Bureau of Jonesboro, Inc.,* 2014 U.S. App. LEXIS 15676 (8th Cir. Aug. 15, 2014) (citing cases) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56-57 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). *See also Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) (J. Posner) (characterizing the failure to disclose directly adverse legal authority as "unacceptable," "unprofessional," and "pointless," and further noting that "when there is apparently dispositive precedent, [a litigant] may urge its overruling or distinguishing or reserve a challenge to it for a petition for certiorari but may not simply ignore it.").

March 28, 2018                     Respectfully Submitted,

                                          OBLON, McCLELLAND, MAIER &
                                             NEUSTADT, L.L.P.

By: /s/ Eric W. Schweibenz
Eric W. Schweibenz *(Pro Hac Vice)*
Robert C. Mattson *(Pro Hac Vice)*
J. Derek Mason *(Pro Hac Vice)*
John F. Presper *(Pro Hac Vice)*
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000
eschweibenz@oblon.com
rmattson@oblon.com
dmason@oblon.com
jpresper@oblon.com

NORTON ROSE FULBRIGHT US LLP
Barbara J. D'Aquila, MN Bar No. 002112X
Laura J. Borst, MN Bar No. 032548X
Margaret Rudolph, MN Bar No. 0393371
RBC Plaza
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
(612) 321-2800
barbara.daquila@nortonrosefulbright.com
laura.borst@nortonrosefulbright.com
margaret.rudolph@nortonrosefulbright.com

*Attorneys for Plaintiffs Grupo Petrotemex, S.A. de C.V. and DAK Americas LLC*