# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

GRUPO PETROTEMEX, S.A. DE C.V. and
DAK AMERICAS LLC,

                    Plaintiffs,

v.

POLYMETRIX AG,

                    Defendant.

_____/

Civil Action No. 16-cv-02401 SRN-JSM

**PLAINTIFFS' SUPPLEMENTAL
MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO
DISMISS COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(b)(1)**

Plaintiffs Grupo Petrotemex, S.A. De C.V. and DAK Americas LLC ("GPT/DAK") provide this supplemental briefing, as directed, to the four cases cited for the first time by counsel for Polymetrix AG ("Polymetrix") at the June 5, 2018 hearing on Polymetrix's Motion to Dismiss.

Polymetrix acknowledged that its motion papers did not cite patent cases involving Article III jurisdiction, but represented that these four new cases "make the distinction between Article III standing and statutory standing." Tr. at 33:23-24. Counsel for Polymetrix continued, "But as far as Mr. Schweibenz's comment about his understanding that the only time that that [constitutional standing] comes up is in the ownership [context], and that's true. That's statutory standing in the ownership context under [§] 281, where it says, a patentee should have a right to bring a cause of action. But again, that's statutory. And we're not – we're not converting the merits of importation to a jurisdictional issue. They're separate, as this Court knows." *Id.* at 34:2-10.

- 1 -

Counsel was correct that the question of Article III standing arises nearly exclusively when a defendant questions whether a plaintiff owns a patent or holds exclusionary rights sufficient to allow it to pursue a claim of infringement.[1]  He was also correct that most patent cases addressing standing turn on standing under § 281, **as do all four of the cases he cited**.  He was incorrect, however, that the cases he cited distinguish this ownership-based Article III inquiry from a statutory standing inquiry in a way that is helpful to Polymetrix.  In fact, two of the four cases—*Alps South* and *National Oilwell Varco*—say next to nothing about Article III standing except that it exists.  The other two, *Morrow* and *Drone Techs*, make it clear that a plaintiff has constitutional standing when, at the time of filing the complaint, it can plausibly allege that it owns the patent and that the patent has been infringed.  This is a low hurdle that GPT/DAK has easily cleared.  An inquiry into the weight of the evidence supporting the specific allegations of infringement is not required nor even permitted by these decisions.

I.    *Morrow v. Microsoft Corp.*

The leading case among the four cited is *Morrow v. Microsoft Corp.*, 499 F.3d 1332 (Fed. Cir. 2007).  *Morrow* presented an unusual patent ownership situation:  after a company holding a patent entered bankruptcy, the legal title to a patent went to one trust, and the right to file actions for infringement went to a separate trust.  *Id.* at 1335.

---

[1]  The other context in patent cases where the question of Article III standing typically arises relates to whether the court has declaratory judgment jurisdiction.  *See* 28 U.S.C. § 2201(a).  As explained by GPT/DAK's counsel during the hearing, however, Polymetrix's motion to dismiss here involves neither an ownership challenge nor a question of whether the Court has declaratory judgment jurisdiction.

Considering Article III standing, the court recited the "minimal constitutional standing requirements" that "have been described as the injury in fact, traceability, and redressability inquiries." *Id.* at 1339 (applying the *Lujan* factors). "But," the court continued, "standing 'often turns on the nature and source of the claim asserted. . . . Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'" *Id.* (citing cases). The court then immediately began a discussion of which persons are entitled to bring a claim under the Patent Act. This issue, determining whether the plaintiff at hand is a "patentee" within the meaning of 35 U.S.C. § 281, is the typical standing question for a patent case. And here, the court defined that question as a matter of Article III standing, not merely statutory standing: "Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights. The party holding the exclusionary rights to the patent suffers legal injury in fact under the statute." *Id.* (citation omitted) (emphasis added). *Morrow* then discussed at length the types of parties holding exclusionary rights that have Article III standing to sue for infringement, which has little relevance here, because there is no dispute that GPT/DAK holds the correct exclusionary rights.

*Morrow* next turned to an analysis of injury in fact. But there too, the court's multi-page discussion never engaged the fact question of the sufficiency of the evidence of infringement. Instead, the court framed the question as "whether [the trust's] interests in the patent include sufficient exclusionary rights such that [the trust] suffers an injury in fact

from infringing activities." *Id.* at 1384. The court even cited *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000), for the proposition that "[s]tanding to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent," and not on a contractual arrangement. *Morrow*, 499 F.3d at 1342. The court never looked further than ownership in considering injury in fact or suggested that it would be proper to do so.

Even the dissent, in criticizing the majority's analysis of which rights holders might have standing to sue based on their ownership interests, reaffirmed that "Article III standing to sue in [patent cases] derives solely from the Patent Act." *Id.* at 1386 (alteration in original) (quoting *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001)). In *Intellectual Property Development*, the Federal Circuit explained that to establish Article III standing in a patent case, a party "that has the right to exclude others from making, using, and selling an invention described in the claims of a patent is constitutionally injured by another entity that makes, uses, or sells the invention." *Id.* The plaintiff's injury must be "fairly traceable . . . to the allegedly infringing conduct." *Id.* This basic requirement to plausibly allege infringing conduct that is fairly traceable to the defendant is all that the Federal Circuit requires. The pleading requirement is so straightforward that *Morrow* reduced it to the question of ownership of the exclusionary rights. The court's injury in fact analysis begins: "Here, we are faced with the question of whether [the trust] holds the exclusionary rights and suffers constitutional injury in fact." *Id.* at 1383. Injury in fact, in the Federal Circuit's view, is grounded in the question of ownership.

II.    *Drone Techs, Inc. v. Parrot S.A.*

*Drone Techs, Inc. v. Parrot S.A.*, 838 F.3d 1283 (Fed. Cir. 2016), presented an appeal of the district court's denial of a motion to dismiss for lack of standing. The Federal Circuit affirmed the district court's ruling on this issue, finding that the patent holder had constitutional standing to bring suit.

The standing challenge centered on the question of whether the named inventor of the patent was the true, sole inventor. *Id.* at 1290. The appellant contended that the Federal Circuit should examine deposition testimony to find that a co-inventor was not named on the patents, and without the true inventor, the appellee lacked ownership and therefore constitutional standing. *Id.*

The Federal Circuit reiterated the standard that a plaintiff must demonstrate an injury in fact, which "occurs when a party infringes a patent in violation of a party's exclusionary rights." *Id.* at 1341 (citing *Morrow*, 499 F.3d at 1339-40). The court then promptly moved on to discussing the elements of the Patent Act. After rejecting the appellant's argument about ownership, the *Drone Techs* court concluded, "[i]n short, Drone established standing under § 281 by virtue of its status as the sole patentee (i.e., successor in title), and also satisfied Article III's standing requirement <u>by owning a patent that allegedly has been infringed</u>." *Id.* at 1294 (emphasis added). The court relied on *Pandrol USA, LP v. Airboss Ry. Prod., Inc.*, 320 F.3d 1354, 1368 (Fed. Cir. 2003), another case addressing a constitutional standing challenge, which held: "<u>Establishing ownership of a patent that has been infringed satisfies the requirements of Article III standing</u>." *Id.* (emphasis added).

- 5 -

Apart from this explicit holding that Article III necessitates only ownership of a patent and a plausible allegation of infringement, *Drone Techs* is notable for two reasons. First, the appellee's infringement claim was that Parrot (like Polymetrix here) indirectly infringed the patent in question "by virtue of its customers' actions."[2]  *Drone Techs,* 838 F.3d at 1289.  Second, the appellant asked the Federal Circuit to inquire into the merits of inventorship, a fact-specific inquiry, much as Polymetrix here asks the court to examine the available evidence of importation.  The Federal Circuit declined, stating, "we need not address the merits of Parrot's inventorship challenge," and "we see no reason why Parrot should be allowed to reassert an invalidity challenge under the guise of a motion to dismiss for lack of standing."  *Id.* at 1293-94.  The response to Polymetrix's challenge should be the same.

## III.   *Alps South, LLC v Ohio Willow Wood Co.*

*Alps South, LLC* mentions Article III only in passing:  "Neither party disputes that Alps possessed standing under Article III.  Before we may exercise jurisdiction over a patent infringement action, however, we must also satisfy ourselves that, in addition to Article III standing, the plaintiff also possessed standing as defined by § 281 of the Patent Act."  *Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015).

---

[2] This is not at all surprising, as it is well-settled that "the requisite intent to induce infringement may be inferred from all the circumstances" and "this intent may be established through circumstantial evidence," including by "an alleged infringer who 'knew or should have known his actions would induce actual infringements.'"  *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) (emphasis in original) (citing cases).

Polymetrix is wrong about *Alps South*. It does not contain any meaningful discussion of Article III standing.

## IV.   *National Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*

*National Oilwell* contains just two mentions of Article III standing, both cursory. "Before a court may exercise jurisdiction over a patent infringement action, it must be satisfied that, 'in addition to Article III standing, the plaintiff also posesse[s] standing as defined by § 281 of the Patent Act.'" *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 960 (Fed. Cir. 2017) (alteration in original) (citing *Drone Techs.*, 838 F.3d at 1292). The Federal Circuit then considered the ownership of the patent at issue, but did not question constitutional standing. In discussing the patent holder's claims, the court related only that the complaint "assert[ed] infringement of the '142 Patent," *id.* at 968, without engaging with the infringement evidence.

### Conclusion

Polymetrix presented these four cases as the ones that would "make the distinction between Article III standing and statutory standing." Tr. at 33:23-24. These cases do not help Polymetrix's position. They merely reiterate what the parties already knew—that a plaintiff making a claim for patent infringement must have certain exclusionary rights, and must allege infringement of the patent in a manner that would survive a Rule 12(b)(6) motion. None of these cases go beyond this analysis to consider the weight of the evidence proving the alleged infringement. In fact, *Drone Techs* specifically declined to make a fact-specific inquiry beyond the question of ownership. That would be, as counsel for

Polymetrix put it, "converting the merits of importation to a jurisdictional issue.  They're separate, as this Court knows." *Id.* at 34:2-10.

The Federal Circuit, through these four cases, has stated that to establish constitutional standing in a patent case, a plaintiff must hold certain exclusionary rights contemplated by the Patent Act and plausibly allege infringement.  GPT/DAK met these requirements, and they fulfilled both the standing requirements of the Patent Act and the Article III standing requirements of pleading an injury in fact, causation, and redressability.  If Polymetrix, or the Court, has reservations about the evidence that will prove GPT/DAK's entitlement to relief, those doubts were to be resolved through a Rule 12(b)(6) motion, which is no longer possible here, or in the future through a Rule 56 motion or at trial, after the conclusion of appropriate discovery.   Attempting to discuss the weight of the evidence that supports importation now would be considering the merits in the guise of a jurisdictional issue.  Because GPT/DAK properly pled their causes of action, no further factual inquiry is permitted.

June 14, 2018                    Respectfully Submitted,

                                 OBLON, McCLELLAND, MAIER &
                                    NEUSTADT, L.L.P
                                 By:s/Eric W. Schweibenz

                                 Eric W. Schweibenz *(Pro Hac Vice)*
                                 Robert C. Mattson *(Pro Hac Vice)*
                                 J. Derek Mason *(Pro Hac Vice)*
                                 John F. Presper *(Pro Hac Vice)*
                                 1940 Duke Street
                                 Alexandria, VA 22314
                                 (703) 413-3000
                                 eschweibenz@oblon.com
                                 rmattson@oblon.com
                                 dmason@oblon.com
                                 jpresper@oblon.com

                                 NORTON ROSE FULBRIGHT US LLP
                                 Barbara J. D'Aquila, MN Bar No. 002112X
                                 Laura J. Borst, MN Bar No. 032548X
                                 Margaret Rudolph, MN Bar No. 0393371
                                 RBC Plaza
                                 60 South Sixth Street, Suite 3100
                                 Minneapolis, MN 55402
                                 (612) 321-2800
                                 barbara.daquila@nortonrosefulbright.com
                                 laura.borst@nortonrosefulbright.com
                                 margaret.rudolph@nortonrosefulbright.com

                                 *Attorneys for Plaintiffs*