UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civil No. 16-cv-02401 (SRN/HB)

GRUPO PETROTEMEX, S.A. DE C.V. and DAK AMERICAS LLC,

Plaintiffs,

v.

POLYMETRIX AG,

Defendant.

**UNITED STATES CUSTOMS AND BORDER PROTECTION'S OBJECTION TO ORDER ON THIRD PARTY MOTION TO COMPEL**

United States Customs and Border Protection ("CBP") respectfully submits this Objection to the Court's Order on Plaintiffs' Motion to Compel, Docket No. 275, filed September 21, 2018. In this patent litigation to which CBP is not a party, the Court has compelled CBP to produce to Plaintiffs Grupo Petrotemex, S.A. de C.V. and DAK Americas LLC ("Plaintiffs" or "GPT/DAK") entry information "sufficient to identify the shipper, importer, exporter, and consignee" of four shipments of polyethylene terephthalate (PET) that arrived in the United States via air shipment. Docket No. 275, at 15.

The Magistrate Judge's Order is clearly erroneous and contrary to law for two primary reasons. First, the Order relies on an incorrect comparison between CBP's treatment of confidential information from shipments arriving by vessel[1] as compared to shipments arriving by aircraft, which are governed by different statutory and regulatory

[1] The term "vessel" is defined to include "every description of water craft or other contrivance used, or capable of being used, as a means of transportation in water, but does not include aircraft." 19 U.S.C. § 1401(a).

frameworks. CBP has followed these regulations in the treatment of information pertaining to both air and vessel shipments, and thus the Court clearly erred in its conclusion that CBP's withholding of information from air shipments was arbitrary and capricious on that basis. An opinion by the United States District Court for the Southern District of New York, recently entered on September 24, 2018, provides further support for CBP's interpretation of the confidentiality of information pertaining to air as compared to vessel shipments. *Panjiva, Inc. v. U.S. Customs and Border Protection*, 17-cv-8269, 2018 WL 4572251, at *3 (S.D.N.Y. Sept. 24, 2018).

Second, the Magistrate Judge erred in the application of the standard of review under the Administrative Procedure Act ("APA") that applies to Plaintiffs' motion. The APA provides a narrow and deferential standard of review of an agency decision. In this case, CBP's interpretation of its regulations and application to the circumstances of Plaintiffs' request was rational and consistent with the law, and it was entitled to deference. The Court exceeded the APA's standard of review when it substituted its own judgment for the agency's reasonable interpretation of its own regulations that prohibited the release of entry information without the owner's consent.

## BACKGROUND

Plaintiffs GPT/DAK served a third-party subpoena on CBP on March 7, 2018, seeking documents and deposition testimony regarding air shipments of PET imported into the United States. Schweibenz Decl. Ex. A, Docket # 250-1. Plaintiffs and CBP then

engaged in a back-and-forth process regarding the requests, which were subsequently narrowed to "four requested bills of lading or air waybills." Docket No. 249 at 12.[2]

In their June 19, 2018 affidavit submitted to CBP, one of Plaintiffs' numerous arguments for release of the information was their "belief" that it is not confidential because certain entry information for shipments arriving by boat is available through private subscription services. Docket No. 250-2, Schweibenz Decl. Ex. D, ¶ 18. However, Plaintiffs did not raise this issue in their subsequent correspondence to CBP, nor did they raise this issue in their memorandum in support of their motion to compel. *See generally* Docket No. 249. Because Plaintiffs did not raise the issue in their motion, CBP did not address that point in its responsive brief or prepare a response for oral argument. Rather, the Magistrate Judge raised the matter *sua sponte* at the motion hearing. *See* Declaration of Chad Blumenfield ("Blumenfield Declaration"), Ex. A, Selected Portions of Transcript from September 14, 2018 Motion Hearing, at 25, 42-43.

In the Order granting Plaintiffs' Motion to Compel, the Magistrate Judge reasoned that "[i]t strains credulity to suggest that the identity of the shipper, importer, exporter, and consignee is confidential when goods enter the United States by air yet not confidential when goods enter the United States by other means." Docket No. 275, at 9. The Court further reasoned that CBP's construction and application of 19 C.F.R. § 103.23(b)(6) violated the APA standard of review because the agency had not sufficiently considered

---

[2] The correspondence is set out in CBP's Mem. in Opp. of Mot. to Compel, Docket No. 262, at 2-3.

whether the information was "confidential" or that release of the information would be "improper" under the circumstances at issue here. Docket No. 275, at 10-12.

## ARGUMENT

### I. Legal Standards

#### A. Standard of Review of Objections to a Magistrate Judge's Nondispositive Order

The Court must set aside any portions of the Magistrate Judge's Order that are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Proc. 72(a); Local Rule 72.2. The Order is clearly erroneous "when, after reviewing the entire record, a court is left with the definite and firm conviction that a mistake has been committed." *Knutson v. Blue Cross and Blue Shield of Minnesota*, 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting *Thorne v. Wyeth*, Civ. No. 06–3123, 2007 WL 1455989, at * 1 (D. Minn. May 15, 2007). The Order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co*., 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

#### B. Standard of Review of the Government's *Touhy* Decision

The Magistrate Judge selected the correct standard of review to determine Plaintiffs' third-party Motion to Compel against a federal agency. As the Court properly held in this matter and recently in *Upsher-Smith Labs, Inc. v. Fifth Third Bank*, there is no waiver of sovereign immunity under the discovery rules to compel a non-party federal agency to produce records. No. 16-cv-556 (JRT/HB), 2017 WL 7369881, at *6-*7 (D. Minn. Oct. 18, 2018) (Bowbeer, Mag. J.) (citing *U.S. E.P.A. v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d

Cir. 1999)). Rather, the requisite waiver is under the Administrative Procedure Act (APA). *Id.*; 5 U.S.C. § 702. While the Eighth Circuit has yet to definitively decide this issue, this case and *Upsher-Smith* follow the majority of the Circuit Courts of Appeal, which have applied the APA's standard of review to an agency's determination to withhold records requested under its *Touhy* regulations in a federal proceeding to which the agency is not a party. 5 U.S.C. § 706(2)(A); *Upsher-Smith*, 2017 WL 7369881, at *6-*7; *cf. Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1103 (8th Cir. 2012) (holding that a tribal government was immune from enforcement of a third-party subpoena, reasoning by analogy from *U.S. E.P.A. v. Gen. Elec. Co*, and recognizing the importance of the APA's waiver when the federal government is subject to a third-party subpoena); *see Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007); *Gen. Elec.*, 197 F.3d at 599; *COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 277 (4th Cir. 1999); *see also* CBP's Mem. in Opp. of Mot. to Compel, Docket No. 262, at 4-10.

Under the APA's narrow standard of review, the Court may reverse only those agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Something more than mere error is necessary to meet this test. *N.L.R.B. v. Parkhurst Mfg. Co.*, 317 F.2d 513, 518 (8th Cir. 1963). Under this deferential standard, the Court upholds the agency's decision if it finds any "rational connection between the facts the agency considered and the choice it made," and "the court is not to substitute its judgment for that of the agency." *F.C.C. v. Fox Televisions Stations, Inc.*, 556 U.S. 502, 513 (2009); *Jurewicz v. USDA*, 741 F.3d 1326, 1331 (D.C. Cir. 2014).

### C. The applicable law mandates that CBP treat confidential information related to shipments arriving by vessel differently than information arriving by aircraft.

The Magistrate Judge held that CBP's decision to withhold entry information derived from air shipments was arbitrary and capricious because CBP did not sufficiently demonstrate that the information was "confidential" or that release would be "improper" under 19 C.F.R. § 103.23(b)(6). Docket No. 275, at 8. Key to the Magistrate Judge's reasoning was an incomplete understanding of the statutory and regulatory structure that governs information for shipments that arrive by vessel as compared to those that arrive by aircraft (and other means). This issue was not briefed by the parties, and therefore, the government did not have a sufficient opportunity to clarify the law prior to entry of the Order.

The regulation that CBP correctly relied upon in responding to Plaintiffs' *Touhy* request is 19 C.F.R. § 103.23(b)(6), which states that "disclosure will not be made [where] [d]isclosure would improperly reveal confidential commercial information without the owner's consent (e.g. entry information)." The Magistrate Judge was concerned with what it perceived to be an inconsistency: because certain entry information from vessel shipments is available to the public, it believed it was improper for CBP to consider analogous information for shipments arriving by aircraft to be "confidential."

However, the Magistrate Judge did not have the benefit of knowing that a regulation exists authorizing CBP to disclose certain vessel shipment data limited to some of the contents of vessel manifests and, significantly, provides the owners of the data the option of requesting that their information be kept confidential. 19 C.F.R. § 103.31. No similar

regulation exists for air shipment data. Specifically, Section 103.31(a)-(c) allows members of the press to examine vessel manifests and provides for other limited disclosure to the public, which may include information pertaining to the shipper, consignee, and other "commercial or financial information." Importantly, § 103.31(d) permits an importer or consignee to request that its name and address and the shipper's name and address be kept confidential by providing a certification that disclosure "would likely cause substantial harm to the competitive position of the importer or consignee." § 103.31(d)(1)(ii). Thus, Section 103.31 requires that vessel manifests be disclosed to the public in certain prescribed ways, with the ability for the importer to opt out of public disclosure. There is no analogous regulation that applies to air shipments, no statute or regulation that makes entry information from air shipments public, and no regulatory process for importers to certify the confidentiality of the information from air shipments. *See Panjiva, Inc. v. U.S. Customs and Border Protection*, 17-cv-8269, 2018 WL 4572251, at *3 (S.D.N.Y. Sept. 24, 2018).

The basis for this regulatory dichotomy stems from 19 C.F.R. § 103.31's enabling statute, the Smoot-Hawley Tariff Act (codified at 19 U.S.C. § 1431) ("Tariff Act"). Originally enacted in 1930, the Tariff Act requires that any vessel entering the United States provide certain entry information about its cargo in a vessel manifest. *Panjiva, Inc. v. U.S. Customs and Border Protection*, 17-cv-8269, 2018 WL 4572251, at *3 (S.D.N.Y. Sept. 24, 2018). In 1984, Congress first amended the statute to require public disclosure of certain information in the vessel manifests. *Id.* Then, in 1996, Congress amended the public disclosure requirements twice in short succession. First, Congress added the word

"aircraft" so that the public disclosure provision included both vessel and aircraft manifests. *Id.* Shortly thereafter, Congress amended the public disclosure provision again, intending to limit public disclosure to information from a "vessel manifest." *Id.* However, due to a codification error after the second amendment, the current language of the Code reads as follows:

> (c) Public disclosure of certain manifest information
>
> (1) Except as provided in subparagraph (2), the following information, when contained in **a vessel vessel or aircraft manifest**, shall be available for public disclosure: […]

19 U.S.C. 1431(c)(1) (repeated word in original) (emphasis added).

The U.S. District Court for the Southern District of New York very recently grappled with this statutory text and its unusual legislative history, and ultimately agreed with CBP's longstanding interpretation that Congress intended the public disclosure requirements of the Tariff Act to apply only to vessel manifests, and not aircraft manifests. *Panjiva, Inc.*, 2018 WL 4572251, at *3, *6. In *Panjiva*, similar to this matter, the plaintiffs sought "aircraft cargo manifests" pursuant to a Freedom of Information Act request. *Id.* at *1. The *Panjiva* plaintiffs argued that the air manifests contained public data under the Tariff Act, and that the government had erred by refusing to promulgate regulations facilitating access to such data. *Id.* at *2. The court reviewed the Senate Finance Committee's report from the second, most recent amendment to the Tariff Act's public disclosure requirement, concluding that Congress intended the provision to cover vessel manifests only, and to omit any reference to aircraft manifests. *Id.* at *8-9 (noting that "the [Committee] report explained that [the amendment text] 'amends … the Tariff Act of 1930

to clarify that the referenced in the section is to vessel manifests *and not to other types of manifests*'") (emphasis added). As a result, the *Panjiva* court held that the government is under no duty to adopt a regulation to facilitate disclosure of information from aircraft manifests. *Id.* at *9.

CBP has consistently interpreted its obligations in accordance with the *Panjiva* court's analysis. The agency has adopted a regulation (19 C.F.R. § 103.31) with respect to vessel manifests that provides for public disclosure of certain information as allowed by the Tariff Act, and which also provides a process for importers to opt out of public disclosure. Unlike vessel shipments, there is no regulatory process in place to facilitate public disclosure or an opt-out option for information relating to aircraft shipments. While Plaintiffs or the Court may dispute Congress' distinction between information relating to goods shipped by sea as compared to information relating to goods shipped by air as a matter of policy, CBP's position comports with the regulations, and reversal of CBP's decision on this basis is inconsistent with the Court's limited role in reviewing an agency decision under the APA.

**D. CBP's interpretation of 19 C.F.R. § 103.23(b)(6) and application in this matter was reasonable and entitled to deference.**

The Magistrate Judge rejected CBP's interpretation of § 103.23(b)(6) that the requested entry information from air shipments must be withheld unless the owner consents to its release. The Order primarily focused on the terms "improperly" and "confidential" in § 103.23(b)(6), reasoning that CBP failed to give effect to these terms. Docket No. 275, at 8-11. Neither party briefed these issues prior to the issuance of the Order. In an attempt

to construe the regulation, the Court exceeded APA review and substituted its own construction in place of CBP's reasonable interpretation. Further, the Court's Order fails to give meaning to the language requiring the owner's consent to release of its entry information.

When reviewing whether an agency has erred in interpreting its own regulations, the agency's interpretation should be afforded "substantial deference." *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994). The Court's task

> is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." In other words, [the Court] must defer to the Secretary's interpretation unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation."

*Id.* (internal citations omitted); *see also Cavanaugh v. Wainstein*, Civil No. 05-123, 2007 WL 1601723, at *12 (D.D.C. June 4, 2007) (affirming DOJ's interpretation of *Touhy* regulation under this standard).

19 C.F.R. § 103.23(b)(6) provides:

> (b) Circumstances where disclosure will not be made. Among the demands in response to which disclosure will not be authorized by the Chief Counsel are those demands with respect to which any of the following factors exits:
>
> […]
>
>> (6) Disclosure would improperly reveal confidential commercial information without the owner's consent (e.g. entry information).

CBP interprets the inclusion of the term "(e.g. entry information)" to mean that entry information is one specific example of "confidential commercial information" to which the

regulatory provision refers. Docket No. 250-3, Schweibenz Decl. Ex. E.; CBP's Mem. in Opp., Docket No. 262, at 12-13. In this motion to compel, there is no dispute that Plaintiffs' request to identify the individuals or parties connected to the four suspect air shipments implicates "entry information." *Id.* at 12 (citing Docket #250-3, Ex. F, at 4). Because "entry information" is expressly included in the regulatory language as an example of "confidential commercial information," CBP was not obligated to provide any additional analysis explaining why Plaintiffs' requested entry information is "confidential" under Section 103.23(b)(6). CBP's interpretation is not only reasonable but the most common sense construction of the regulatory language, and the government is aware of no other legal authority on point that conflicts with CBP's interpretation.

CBP interprets the term "improperly" in the context of Plaintiffs' request to mean that disclosure of confidential commercial information (entry information) would be improper *without the owner's consent*, and thus a "proper" disclosure of such entry information can be made with the owner's consent. Docket No. 250-3, Schweibenz Decl. Ex. E.; CBP's Mem. in Opp., Docket No. 262, at 12-13. The Order erroneously reasoned that CBP failed to consider what would be a "proper" disclosure, pointing to 18 U.S.C. § 1905 as the implementing statute for 19 C.F.R. § 103.23(b)(6). But the implementing statute for an agency's *Touhy* regulations is the Federal Housekeeping Statute, 5 U.S.C. § 301. The Housekeeping Statute simply provides that an agency head can prescribe regulations related to requests for agency records and testimony. S*ee Cavanaugh*, 2007 WL 1601723, at *4 (citing *Touhy*). CBP cited 18 U.S.C. § 1905, the Trade Secrets Act, in

its denial as a further basis for withholding Plaintiffs' requested information. The Trade Secrets Act makes it unlawful, and indeed subjects agency employees to criminal penalties, for disclosure of confidential commercial information[3] except as provided by law.

CBP's construction of the term "improperly" is also reasonable when viewed in the larger statutory and regulatory context. As discussed above, Congress has deemed the identity of the shipper and consignee to be public information for vessel shipments but not for aircraft shipments. As compared to vessel shipments, shipments arriving by aircraft are voluminous, encompassing all international FedEx and UPS shipments sent to individuals as well as businesses. *See* Bart Elias, Security of Air Cargo Shipments, Operations and Facilities, Congressional Research Service, at 2, 6 (Jan. 24, 2018), available at https://fas.org/sgp/crs/homesec/R45082.pdf. There is no regulatory process or requirement for CBP to make identifying information from aircraft shipments available to the public, or for the owner of the information to certify its need for confidentiality.

Further, Section 103.23(b)(6) by its plain terms does not require CBP to attempt to secure the owner's consent or objection to release. *Compare with* 5 C.F.R. § 5.12(b) (requiring CBP to notify submitters of commercial information about a request submitted under the Freedom of Information Act for their information, and providing an opportunity for the submitter to object to disclosure). Plaintiffs argued that they are unable to supply

[3] Contrary to what its name implies, the Trade Secrets Act broadly covers several types of competitively sensitive commercial information not meeting the narrower definition of "trade secret." 18 U.S.C. § 1905 (covering information that "concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; . . .").

the owner(s)' consent to release without CBP first disclosing the identities of the owners, making it impossible for Plaintiffs to comply with CBP's interpretation of § 103.23(b)(6). Blumenfield Declaration, Ex. A, Oral Argument Transcript Excerpt at 10. While this is understandably frustrating from Plaintiffs' perspective, it does not follow that CBP has acted arbitrarily. To the contrary, CBP has followed its regulations consistently and reasonably.

**E. Production pursuant to the protective order violates Section 103.23(b)(6), because it requires disclosure of entry information without the owner's consent.**

The Magistrate Judge correctly recognized that a protective order does not "obviate or override an agency's obligation to follow its regulations where the regulations require that information be withheld and where it appears that the agency has 'articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" Order, Docket No. 275, at 11 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Because the Order is clearly erroneous and contrary to law with respect to its conclusion that CBP failed to articulate a rational basis for its denial, there is no legal basis to compel CBP to produce the identifying information under the protective order. *See* Order, Docket No. 275, at 11 n7. *See also* Marentette Letter, Docket No. 279 (protective order would not protect third party owner(s)).

**CONCLUSION**

The portions of the Order, Docket No. 275, holding that CBP's denial of Plaintiffs' *Touhy* request pursuant to 19 C.F.R. § 103.23(b)(6) violated the APA standard

of review are clearly erroneous and contrary to law. CBP respectfully requests that its Objections be sustained and that Plaintiffs' Motion to Compel be denied.

Dated: 10/5/18

ERICA H. MacDONALD
United States Attorney

s/ Pamela A. Marentette

BY: PAMELA A. MARENTETTE
Assistant U.S. Attorney
Attorney ID Number 389725
BY: CHAD A. BLUMENFIELD
Assistant U.S. Attorney
Attorney ID Number 387296
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: 612-664-5600
Email: Pamela.Marentette@usdoj.gov
Email: Chad.Blumenfield@usdoj.gov