UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Grupo Petrotemex, S.A. DE C.V. and DAK Americas LLC, Plaintiffs, vs. Polymetrix AG, Defendant. | File No. 16-cv-2401 (SRN/HB) St. Paul, Minnesota September 14, 2018 1:37 p.m. |

---

BEFORE THE HONORABLE HILDY BOWBEER
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
**(MOTION HEARING)**

Proceedings recorded by mechanical stenography; transcript produced by computer.





APPEARANCES

| | |
|---|---|
| For the Plaintiffs: | Fulbright & Jaworski LLP<br>Barbara Jean D'Aquila, Esq.<br>Margaret Rudolph, Esq.<br>60 South 6th Street<br>Suite 3100<br>Minneapolis, MN 55402 |
| For the Defendant: | Dergosits & Noah LLP<br>Todd Noah, Esq.<br>One Embarcadero Center<br>Suite 350<br>San Francisco, CA 94111 |
| Third-Party Defendant: U.S. Customs and Border Protection | United States Attorney's Office<br>Chad Blumenfield, AUSA<br>600 United States Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415 |
| Court Reporter: | Lynne M. Krenz, RMR, CRR, CRC<br>Suite 146<br>316 North Robert Street<br>St. Paul, Minnesota 55101 |





**P R O C E E D I N G**
**IN OPEN COURT**

THE COURT: We are in Court this afternoon in the matter of Grupo Petrotemex and DAK Americas, LLC, versus Polymetrix AG. In particular, this is Civil Matter Number 16-2401.

And in particular, we are here on Docket Number 248, which is Plaintiffs' motion to compel discovery from U.S. Customs and Border Protection.

THE COURT: Let me start by getting appearances. First on behalf of the Plaintiffs.

MS. D'AQUILA: Good afternoon, Your Honor.

Barbara D'Aquila and Margaret Rudolph on behalf of GPT/DAK. And Mr. Schweibenz and Presper send their best wishes. Mr. Schweibenz is in Japan or he would be here.

THE COURT: And -- well good afternoon. And good to have you here this afternoon. You can send our regards back to Mr. Schweibenz and Mr. Presper.

Let me hear who is in court on behalf of Polymetrix?

MR. NOAH: Good afternoon, Your Honor. Todd Noah on behalf of Defendant Polymetrix.

THE COURT: Okay. Good afternoon.

And who's here on behalf of U.S. Customs and Border Protection?





MR. BLUMENFIELD: Good afternoon, Your Honor. Chad Blumenfield.

THE COURT: Good afternoon, Mr. Blumenfield.

This is Plaintiffs' motion. Who is going to be arguing on behalf of Plaintiffs?

MS. D'AQUILA: I will be, Your Honor.

THE COURT: All right. Please come forward.

MS. D'AQUILA: Thank you.

I don't know how much time Your Honor has reserved for this, but I would like to reserve time for rebuttal.

THE COURT: I'm hoping that we can be done -- I'd absolutely like be done in no more than an hour. If we could wrap up sooner than that, that would be lovely.

I can -- don't know sort of how you had anticipated focusing your argument.

I will tell you that at least from my reading of the papers, there are a couple of things that I don't think it's worth focusing on.

One would be the question of whether the federal rules really ought to govern this. Because I concluded after giving it a good hard look back connection with the *Upsher-Smith* case that I -- that I think I have to be directed by the APA in terms of the standard here.

So, if you've got something o
your papers that you think could really



GOVERNMENT EXHIBIT A

then you've always -- then absolutely, let me know.

But I just want to let you know, I'm probably not going to be revisiting that particular conclusion that I reached in a different case.

As far as the grounds go, I am I think most interested in, and I think the brunt of the briefing focused on the ground for withholding that was based on confidential commercial information.

And so I think that's where my principal interest is in hearing your argument. And I'm certainly going to be -- I'm going to have some questions for Mr. Blumenfield as well, on that.

MS. D'AQUILA: Thank you.

THE COURT: So if that helps you focus.

MS. D'AQUILA: It certainly does.

One question. I presume, likewise, in light of *Upsher*, there's no need to spend time on sovereign immunity.

THE COURT: Yes.

MS. D'AQUILA: All right.

I would simply like, with respect to the Federal Rules of Civil Procedure to preserve our arguments --

THE COURT: Of course.

MS. D'AQUILA: -- as that should be the standards that applies.

But I will address it under the APA in light of





*Upsher.* And that's exactly what I plan to do.

THE COURT: All right.

MS. D'AQUILA: So as this Court knows, Section 706 of the APA holds that it is -- that you can set aside an agency decision as unlawful if it is one of four things.

And it's important to recognize it's the word or, not and. "If it's arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."

But I want the Court to also pay attention to the fact that there is a de novo part of review here, and that is with respect to a legal conclusion, as the *Williams* case makes clear.

And we think there are times when de novo conclusion of what the law is is important because we do not believe that the --

Is it all right if I call you the CBP because that's what we've called you forever?

MR. BLUMENFIELD: Absolutely.

MS. D'AQUILA: Thank you very much. Because we do not believe the CBP has read the law correctly.

So what I want to address, and I will start with the commercially confidential information.

But the four factors under the APA that apply under the regulations are, whether the document's available from another source. Is the document -- does the document





involve -- or does the information requested involve commercially confidential information? Would the discovery interfere with the operations of the CPB? And does the CBP have any interest in this?

I will start with the commercially confidential information, because that's where the Court has asked.

But I want to start with a really important point. This is unlike any of the other cases, in one very important respect. The law that is at issue here is the U.S. Constitution Article 1, Section 8, Clause 8, which gives parties patent law rights.

And that's a key deal. Because even the CBP under its mission, acknowledges that it is the CBP's mission to "Enforce the laws of the U.S. while fostering our nation's economic security through lawful international trade."

We're talking about a case here where we believe an unlawful act has happened that violates the U.S. patent laws.

So I think that's an important distinction to remember in terms of the need for this information.

So I want to go back. I'm going to address the other three factors, but I'm going to focus first where the Court asks.

Commercially confidential. I'm going to start with the fact it's not commercially confidential. Because





it has been long held when something's in the public domain, it's not confidential.

And QYResearch has said that the consignees of the 2016 shipments of PET were Avangard Innovative and Pacific High Tech.

So there's no confidentiality with respect to those consignees, which is what seems to be the huge issue.

We know where the shipments came in. We know the amount of shipments that came in. We know the product. And we know the consignee that brought it in. And we know the country it emanated from, Poland.

So really, what is the confidential information that CBP thinks it would be disclosing? That's first.

Next, the protective order.

It's amazing to me that the CBP essentially dismisses the protective order out of hand.

Under Paragraph 4 of the protective order, "Any party or any entity that is being required to make disclosure, even if not a party to the lawsuit, can declare something confidential and seek the protections of the protective order."

Under Paragraph 5 it gets even better. You get Attorneys' Eyes Only protection.

And it gets even better yet. Because there's a section called, Protected Data, underlined in the

Paragraph 5.

And under Protected Data, under the protective order that the parties agreed to and the Court entered, this Court could produce even more protections beyond what is already in the protective order. We think the protective order covers any confidentiality concerns.

But if there's something more, CBP, tell us what it is. We'll probably agree to it and you can enter it.

If there's nothing more that's needed to protect this, fine. But I maintain, based on the protective order alone, there's absolutely no way to use this information in a commercially competitive unfair competition way.

And that's what the whole crux of the, Don't turn it over because it's -- it's -- it would improperly reveal confidential commercial information without the owner's consent.

So that to me takes away the total issue.

And I don't think the CBP has done a single thing to answer it.

In fact, the argument is that we -- that we raise the protective order, but we have to go back first to satisfy that they weren't arbitrary and capricious.

Well, the protective order is what's making them arbitrary and capricious, because they're not even considering it as a way to make sure that if this





information is confidential, that it's protected.

And they're relying on the regulations, Your Honor. If I could just read the regulation, under 19 C.F.R. 103.23(b)(6).

This is a circumstance where disclosure's not to be made. And it would be when disclosure would improperly reveal confidential commercial information without the owner's consent. For example, entry information.

What's totally missed in that thing, and that's why I say de novo review, is the word improperly.

There's nothing improper about revealing, if it is confidential information, which we do not concede, there's nothing improper about revealing confidential information under protective order. Nothing.

And the concept of getting the owner's consent, that is so circular it's not funny.

If we knew who the owner was, we would go get the information from them. That's the whole point on Item Number 1, where it's not available from other sources.

And I will digress for one minute to address that.

As they talk about it being available from other source, they make a pure blanket objection. That's all they did. They didn't tell you a source it was available from. They didn't tell you a thing we didn't do. They didn't give





you an idea of what we should have done that we didn't.

And we don't have any ideas with what else we could have done. We're fresh out of them.

We tried. The Defendant -- the Defendant tried them and didn't have it.

And the Defendant, Polymetrix, even sought the information, which makes us different even from other cases that they're relying on. Even the Defendant wants it here.

We tried Polish customs. We tried Indorama Poland. We tried the Indorama U.S. entities. We tried the consignees. We tried Datamyne and QYResearch, who just said, All we have comes from CBP.

We informally tried the CBP, which told us, We have the information, but we can't give it to you because it's confidential.

And we tried the U.S. Census Bureau, that says, Yep. We have the information, too. But it's information of the CBP. And the CBP says it's confidential.

So it all comes back to the CBP. And if someone can tell us where we could have gone that we didn't go, I'd like to hear it.

But that's one thing that makes this arbitrary, capricious and not within the law, outside the law, because they have not told us a single other document that's





available from another source.

And this is totally different than other cases. Where, for example, take the *Upsher* case. Good case in terms of what they would say should happen.

But what -- what -- what didn't happen there, well, as the Court noted they didn't even attempt Harper's depo. So they didn't even attempted -- when they were trying in *Upsher,* to get the FBI investigative information, they didn't even attempt to try to get it from Harper herself to figure out what they needed and didn't need, so.

But going back to the confidentially commercial information, we've not yet heard why this protective order wouldn't work.

And there are tons of cases where the courts had protective orders and said those suffice.

For example --

THE COURT: Did any of those involved this kind of regulatory construct? And in particular, have any of them involved information of a nonparty?

I mean, I've seen cases where a party's information was involved, but have any of them involved this kind of situation where it is nonparty information?

Because I'm concerned that that's a distinction that may make a difference.

And one of the arguments is that -- that GPT/DAK makes is that -- and I think this was part of the correspondence between you, is that entry information for products or goods that come in by some shipping means is -- is publically available information.

And yet, apparently, if it comes in by another means, then it's being viewed by CBP as confidential.

So I don't see how you can -- I don't see where one gets a kind of a de facto rule, or at least a rationally-based de facto rule, that simply because it is entry information it must therefore be confidential commercial information.

So can you help me understand how that connection gets made?

MR. BLUMENFIELD: Certainly, Your Honor.

So a couple points I would make there.

One is this being CBP's own regulation they're entitled to deference in the way that they interpret it.

I will say that they interpret this, the EG entry information to be a, you know, to apply to the air waybills. The air waybills are what are at issue here and we cited to the regulatory basis for that as well.

It may be that certain information is available publicly in other areas. And I think this is a point the Plaintiffs made in their argument, that if certain





information is available, then it's available through other sources and they could get it elsewhere.

I think the argument that -- that is not confidential and is publicly available doesn't apply specifically to this information.

It isn't publicly available. If it were, and I'd agree with them on this point, it if were available in other way, they could have gotten it in another way.

I think this information isn't publicly known, and therefore, it would be distinguishable from certain information that might be in the public's sphere.

It may be that there's certain information that could be clarified, classified in a certain way, maybe could be publicly available.

That isn't what we're talking about here. CBP has the authority to look at entry information, which is specifically spelled out in this reg.

The reg specifically talks about when it says confidential commercial information, it uses as the only example, there's one example elicited and that's entry information.

So CBP has looked at that and they think that entry information is confidential commercial information, very much in keeping with that reg.

They've look at what entry information is, and one





of their main examples is it is air waybill information.

And so by the parties' more restricted request, that's what's being asked of the CBP. And CBP views this air waybill information as being confidential commercial information.

So they have made this determination that in their -- in their view, in their discretion. This is confidential commercial information.

It doesn't have to be that every piece of information would be, but this -- this particular information certainly is.

And entry information, I think as a whole, that category is one that they view as being confidential commercial information pursuant to the reg, and pursuant to the other U.S. code cite that we've made in our brief as well.

THE COURT: What U.S. code cite is that?

MR. BLUMENFIELD: That was to --

THE COURT: Is that Section 1905?

MR. BLUMENFIELD: Correct. 1905, Your Honor.

THE COURT: But 1905 only talks about public disclosure.

And there are courts that have said that -- in fact, I think there may be a case out of the Eighth Circuit indicating that it is not public disclosure if it's





disclosed pursuant to a protective order.

So I'm not sure how Section 1905 necessarily helps you here.

MR. BLUMENFIELD: So I'll say --

THE COURT: In the presence of a protective order.

MR. BLUMENFIELD: I understand Your Honor's point.

The agency's primary basis for this would be that CFR regulation, we think that the 1905 portion helps us as well.

But to jump to the protective order issue and the CFR provision, when you have a protective order --

I think just to address and clarify the record on one point. So Your Honor made the point, and we would agree with this, I'm not aware of a case in which a Court has ordered the production information of a third-party that's governed by a protective order of different parties.

So the *Fischer* case, Your Honor, was absolutely correct. And we cited to Page 7 of the *Fischer* case where this comes up.

It was the Defendant's information that was being requested, and that was what that issue is, it's on Page 14 on of our brief.

There isn't a case that I'm aware of in which a party has asked for information of a third party, and then

said, Okay, well, because of the protective order in this case that you're not involved in third-party, we're able to go and request it.

The argument on the protective order, as it applies to CFO would have to be, Well, anyone could bring a case, and this the problem that CBP has with this, there's a number of problems that we have with this protective order issue. But anyone could bring a case. And they could say, We're going to name whatever party. The first thing you do in a lot of litigation is you enter into a protective order. Now you turn around, and there's a prohibition on getting this information. Now all of a sudden there's a protective order in place. And you just get the information. And there's an end around what we think is a very clear regulation.

So we would submit that it cannot be -- that just that the absence of the -- the presence of a protective order means that you get information that you're otherwise strictly prohibited from having by a very clear -- what we consider to be at least a very clear regulation.

THE COURT: What is the role then of the word improperly in that regulation?

If -- if the CBP in its wisdom can simply declare all entry information, or at least all air bill information to be confidential, and your position is that by simply





declaring it to be so, it can withhold it, notwithstanding the presence of a protective order that might preclude public disclosure of that information, then what role does the word improperly play in that regulation?

MR. BLUMENFIELD: Your Honor, and I will mention, we did cite the word improperly a number of times in our brief. That appears a number of times. So we did not gloss over that -- that word at all.

I think what that word means is it's another reference to CBP's discretion. So CBP has the discretion to determine how these things go.

There are obviously a number of parties that have vested interests in importation law. There's the importer, there's the parties at issue in this case that are raising various points. There are a number of different entities.

And CBP has the discretion, again, to determine how that should be handled and which parties' information is confidential, and where CBP should give that up.

CBP has made a determination that it will be improper to provide this information in this case and in this particular context, and as it applies to waybills. So they don't view waybills as information they should give up.

Now, in a different context, if it has other types of information, perhaps CBP, again in their discretion,





could make a different determination.

But as long as CBP is using its discretion and not violating the law, and not being arbitrary or capricious -- and it's a very deferential standard, as Your Honor well knows, that is within their purview. It's not --

THE COURT: But it -- yes, it is a deferential standard.

But I'm still trying to understand -- you're telling me that the CBP could decide in its discretion to hand out air bill entry information in some other context. Even though I am to understand that air bill entry information is per se confidential commercial information.

MR. BLUMENFIELD: Let me clarify that point. That wasn't what I intended to say.

THE COURT: Okay.

MR. BLUMENFIELD: What I intended to say is that they could have determined that -- they could written their regs differently. They could have interpreted things differently so that air waybill information could be in a different category.

As it stands, air waybill information, and we spelled this out in our brief, it's in a category of information that is confidential commercial information. It's covered by entry information.

I don't think anybody disputes that this -- that





entry information is confidential commercial information. That's the EG.

I will note that there's a dispute about whether that's appropriate or not from the Plaintiffs. But that is covered by the reg itself. That's in the plain language of the regulation.

And CBP has made a determination that air waybills should be included within that.

So it would be improper, in their view, to reach a different decision when the regulations are clear, as they view them to be.

THE COURT: Is there anyplace that I can look, besides the fact that it's an EG in this regulation?

Is there any other place I can look in the CBP's regulations to see what -- to sort of confirm that interpretation? Or to understand on what basis CBP decided to equate confidential commercial information with air bill entry information?

MR. BLUMENFIELD: So, Your Honor -- I know Your Honor isn't moving past the idea that it's right in the regulation itself.

It's -- I mean, right after confidential commercial information, right in that regulation itself. In the parenthesis it says, "EG entry information." I know you're asking for additional points there, but --

THE COURT: Well, I'm asking for additional points. But I'm also not in -- I'm saying, I'm still not entirely sure I understand that entry information by -- simply by being listed as an example of information that could be confidential commercial information.

I'm still not sure I understand that it is -- that that regulation is saying that it is always confidential commercial information.

I guess I'm hearing from you that it's sort of ipse dixit. If the CBP says it is, then it is.

MR. BLUMENFIELD: I don't know that I would say ipse dixit, Your Honor. I would say plain language, to put a different spin on that. I think it's right within the regulation.

In addition to that, however, I think CBP has made the determination that this is confidential commercial information, both as it's applied in this case, and specifically with respect to air waybills.

If the question is with respect to air waybills, I was just trying to find a part in our brief where we'd go over the air waybill. It's on Page 12 of our brief, Your Honor.

So there's a couple points we make there. One of them is --

THE COURT: Hold on a second. Let me catch up





with you. All right. Go ahead.

MR. BLUMENFIELD: So one of the points we make there, and I don't want to conflate two different points, but I do think both are important points to make.

So one of the questions is whether air waybills are entry information. I wanted to note there, and we have this in our brief, in their letter, they specifically reference air waybills as being entry information.

They talk about what CBP is looking at as air waybills. And they characterize them as entry information. So the air waybills themselves are entry information.

THE COURT: And I don't think we're disputing that.

MR. BLUMENFIELD: Okay. And that's why I'm saying I don't want to conflict the two, but I do think it's important to note that.

Now, we also cited to a treaty that lays out how air waybills are defined. And they identify what an air waybill is and identify how that should be determined. And then specifically, when we have 103. -- and this is on Page 13 of our brief, Your Honor.

In identifying -- and I'll just read it for the record, "In identifying information that CBP cannot disclose without an owner's concept, Section 103.23(b)(6) specifically uses entity information as example." Obviously





that's what we've been talking about.

We then go on to talk about 19 C.F.R. Part 163 in the appendix. And then we talk about what entry consists of. And that talks about evidence of right to make entry. And that specifically it lists -- and that's our emphases added, "air waybill -- air waybill or bill of lading."

So pointing, again, to why, you know, that is something that we considered to be confidential commercial information as defined within the regs, within the treaty, defining what and air waybill is.

THE COURT: Okay.

MR. BLUMENFIELD: Your Honor, any other questions about the confidential commercial information point?

THE COURT: Is your position then, that the CBB -- CBP has concluded, as a matter of regulation, that everything contained in an air waybill is per se confidential commercial information? Every piece of data, everything on there, is confidential commercial information?

MR. BLUMENFIELD: In an air waybill?

THE COURT: Uh-huh.

MR. BLUMENFIELD: My understanding of the way that CBP has interpreted this is yes. An air waybill is -- what the information contained on there is confidential commercial information.





THE COURT: So I guess I'm still trying to understand then what the role of the word improperly is.

Because having the word improperly in that subsection suggests that there may be circumstances under which it could be properly disclosed.

So what -- what do we understand from improperly?

How does CBP distinguish between what would be proper circumstances to disclose confidential commercial information? And what would be improper circumstances to disclose it?

MR. BLUMENFIELD: So, Your Honor, it would be difficult for me to speculate.

This is where AUSAs get in trouble trying to speculate on behalf of their agencies about where an agency might find something to be a proper disclosure.

I'll just suggest, and this is, as Your Honor knows, this is not my area of expertise.

You know, if there were to be a terrorist attack on the United States, and this information were to be important to defend the United States' interest in providing to somebody, you might have an agency where, given the agency discretion, to divulge this information in order to stave off an impending terrorist attack. I think you would want to take a another look at whether that other interest

of the United States would be trumped -- that would trump what's going on here.

I'm using a very extreme example, but the "improperly," I think, would just give the United States CBP the opportunity to have discretion in the appropriate circumstance.

Where CBP would balance that in another less extreme situation, it's difficult for me to say. I'm sure the agency would have a more informed view on areas when it might be proper.

I think here, the question is really they interpreted their own regulation in a way that's consistent with the statutory language and the regulatory language and they did. I mean, they made a determination.

If we had a situation here where Plaintiffs were saying, Look, they didn't look at this regulation. And Plaintiffs came in and said, Look, here's a regulation that specifically talks about confidential commercial information. And looks at it and it says, Here's what entry information is. And they didn't even consider that, well, that would be a different story. But that's not what happened here, Your Honor.

Here we have CBP looking at their own regulation and interpreting it and saying, In this particular circumstance what happened in this case -- and they're not





obligated to provide all of their rationale. They've indicated that in this circumstance they don't view this disclosure to have been proper in this case.

THE COURT: Well, but really the only rationale provided was that that this is an air waybill. An air waybill is entity information. An entry information is confidential commercial information, or go, you don't get it.

That was the sum total of the rationale provided, right?

MR. BLUMENFIELD: That's the gist of the explanation. That that language is specifically in there.

And if you look at the reg, that they view that language as being determinative in this case.

I think that's -- that's part of the analysis that has been provided.

THE COURT: All right.

MR. BLUMENFIELD: Your Honor, I wanted to speak to the burden point.

I don't want to go too -- too far on this. And I want to be clear about what I am saying.

My understanding --

THE COURT: Okay. But I will tell you I was really underwhelmed with the burden argument.

MR. BLUMENFIELD: Your Honor, my understanding, as





I stand here today, is that it is not as simple as simply providing this information.

I don't think it's something that somebody could just -- that somebody has, and they'd be able to simply provide.

I also think that in a typical circumstance, there would be real challenges with just getting that information, based on the request that was made.

Again, I don't want to say too much on that, because I don't know all the details of it and what would be involved.

We did not spend a lot of time in our brief laying out all the steps that would have to be gone through. And having not gone in depth on that. I don't want to spend a ton of time on it.

I just wanted to state for the record, I don't think it is as straightforward as Plaintiffs are saying, where somebody could simply press a button and the information can be forthcoming.

THE COURT: Okay.

MR. BLUMENFIELD: The other point related to that, Your Honor, is we do have a number of other circumstances here.

And putting aside whether this particular situation would require a great deal of work on CBP's part





or not, there are a lot of requests that CBP gets.

And CBP's determination is that when they don't have a dog in the fight, if you will, where they consider in this case, there's a fight between two private entities, their time is better spent doing other things that are more consistent with their mission. That's all laid out very clearly in a letter. They cited to authority on that. We reproduced it in our brief. That's CBP's determination.

And, again, that we think that that is entitled deference of the CBP regulation that basically says the CBP's entitled to expend its resources as it sees fit.

It's made that determination it doesn't think it's best served by getting involved in these cases.

And regardless of exactly how much effort would be involved in this, there may well be floodgates to open, Your Honor.

There may be that if people are able to get this information, there are going to be hundreds of requests that come to CBP. I'm not here to tell you that I know that to be true, because I don't.

But it may be that that's something that is underlying that.

And CBP's made a determination that they want to do other things with their resources, with their employees, with their time. And they don't want to spend it on this.

And that also is interpreted -- entitled, excuse me, to deference.

And the statutory cite for that, which also in our brief 19 C.F.R 103.23(b)(8) and (9).

The last point I wanted to make, Your Honor, unless Your Honor has are further questions, is on the protective order point.

I addressed *Fischer* and *Williams*. It was a separate issue than what we're dealing with here.

In *Williams* the information was already disclosed. So there wasn't an issue about having it be disclosed for the first time.

I think the principal issue for the Court to address there, this was information that had already been out there, and they wanted to get a second forum. They wanted to get testimony when they already got documents. And the court there viewed there being no issue with disclosure.

Here, clearly, that's not the case. Here we're asking for information for our first time. There's a third-party issue covered earlier, but there's also the fact that this has not been disclosed.

THE COURT: Understood.

MR. BLUMENFIELD: Thank you, Your Honor.

THE COURT: Hold on. Hold on. I just want to see





if I had any other questions for you.

Yes. And I alluded to this earlier, and I'm not sure we ever kind of circled back and got to it.

Can you provide me any basis for a distinction between the information that apparently is publicly available when goods enter the country?

Also it's, you know, passing through Customs and Border Protection by boat, which I understand is available publicly, and the information is on an air waybill?

Can you provide -- can you give me any sense at all about why -- or what would be the basis for distinguishing between the confidentiality of this information on the basis of whether the goods came in by boat or came in by air?

MR. BLUMENFIELD: Your Honor, again, this is a challenging area for me to go into. I don't know the history of how it developed.

That air waybill information was classified in a certain way. I'm not frankly familiar with how the information is classified for a shipping container, or how that would go.

I will say that we did cite in our brief to how air waybill information is classified. And I won't recover that ground, because we've been over it.

THE COURT: Uh-huh.





MR. BLUMENFIELD: But I'm not sure about the way that these developed. And why if, in fact -- I'll take, of course, Your Honor's word for it, but assuming they are handled separately, I don't know the historical reasons for why one was handled one way and another was handled in a different way.

THE COURT: But if -- if the CBP was -- was asked for entry information, that happened to be entry information relating to entry by boat, would it be withholding or providing that information?

MR. BLUMENFIELD: Again, Your Honor, I hadn't looked into that in preparation for today's argument, so I wouldn't want to speculate on that.

I would say that we're looking at information that is not available to the public. It is confidential commercial information.

You know, Plaintiffs may have -- they may have a different point on that. They may have other recourse of getting that information, because it may be publicly available.

And, again, I would just be speculating whether or not it is. But here we have information that is clearly, and it's not contested, this information is not publicly available. This information is not publicly-held, it's privately-held. There's an importer.





And, again, I would just circle back to this issue, Your Honor, CBP has determined that it wants to protect the information on that air waybill, which includes the identity of the importer. And they have their reasons for that.

And as it pertains to the air waybill, they've determined they don't want that to be publicly disclosed. They view it as being confidential commercial information.

THE COURT: All right. Thank you.

MR. BLUMENFIELD: Thank you, Your Honor.

MS. D'AQUILA: I am absolutely flummoxed. The word improperly is useless by the definition you just heard. Because air waybills are per se confidential commercial information. Never do you get it.

The word improperly would have no meaning. And that's why I brought up the fact that under *Williams* you have to do a de novo review. Because these are regulations that have legal effect.

The word improperly has to be given meaning. We know that from the rules of construction. And the only reason it has meaning, is if we give it meaning.

Improperly means wrong. Improper.

We wouldn't need that word if what we just heard was the case. Air waybills are protected forever. And I think if people realized that, there would be a lot of

precedent along the lines that I specifically discussed.

I don't want more briefing. Just interested in that very narrow issue. And I'll give you until 4:30 central daylight time on Tuesday to respond very narrowly to their letter.

And now that means that it may be a little later next week before this order gets out. But -- but it is an issue of some concern to me.

And I'm interested in understanding better if there's precedent out there that could be of more guidance than the precedent that I have seen so far.

We, I think, are in recess with respect to this motion.

I think everything else we need to do is sort of case management sorts of things, which do not need to be on the record. Does anybody disagree? Apparently not.

All right. Thank you very much. We're adjourned with respect to the hearing.

(Court adjourned.)

REPORTER'S CERTIFICATE

I, Lynne M. Krenz, do certify the foregoing pages of typewritten material constitute a full, true and correct transcript of my original stenograph notes, as they purport to contain, of the proceedings reported by me at the time and place hereinbefore mentioned.

/s/Lynne M. Krenz
Lynne M. Krenz, RMR, CRR, CRC

Date: September 19, 2018