# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Grupo Petrotemex, S.A. De C.V. and DAK Americas LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Polymetrix AG,<br><br>Defendant. | Case No. 16-cv-2401 (SRN/HB)<br><br>**ORDER ON THIRD-PARTY OBJECTIONS** |

Barbara D'Aquila, Laura J. Borst, and Margaret Rudolph, Norton Rose Fulbright US LLP, 60 S. 6th St., Ste. 3100, Minneapolis, MN 55402; Eric Schweibenz, J. Derek Mason, John F. Presper, and Robert Mattson, Oblon, McClelland, Maier & Neustadt, LLP, 1940 Duke St., Alexandria, VA 22314, for Plaintiffs.

Bernard E. Nodzon, Jr., Theodore Budd, Timothy Sullivan, Faegre Baker Daniels LLP, 90 S. 7th St., Ste. 2200, Minneapolis, MN 55402; Igor Shoiket, Stephen Youtsey, and Todd Noah, Dergosits & Noah LLP, One Embarcadero Center, Ste. 350, San Francisco, CA 94111, for Defendant

Richard Q. Liu, Jones Day, 90 S. 7th St., Ste. 4950, Minneapolis, MN 55402, for third party Chemtex International Inc.

Pamela Marentette and Chad Blumenfield, United States Attorney's Office, 600 United States Courthouse, 300 S. 4th St., Minneapolis, MN 55415, for third party U.S. Customs and Border Protection

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter is before the Court on third party U.S. Customs and Border Protection's ("CBP") Objection ("CBP Obj.") [Doc. No. 286] to the Order on Plaintiffs'

Motion to Compel. Plaintiffs Grupo Petrotemex, S.A. De C.V. and DAK Americas LLC (collectively, "Plaintiffs") oppose CBP's Objection and have filed a response. (*See generally* Pls.' Resp. to Obj. [Doc. No. 288].) Defendant Polymetrix has not taken a position on the Motion to Compel. Based on a review of the record, and for the reasons set forth below, the Court overrules CBP's Objection and affirms the September 21, 2018 Order on Plaintiffs' Motion to Compel [Doc. No. 275].

## II. BACKGROUND

### A. The Underlying Litigation

On July 12, 2016, Plaintiffs filed this action against Defendant Polymetrix, alleging its activities infringed upon U.S. Patents Nos. 7,790,840, 7,868,125, and 7,192,545. (*see* Compl [Doc. No. 1].) Plaintiff Grupo Petrotemex is a Mexican corporation in the business of manufacturing polyethylene terephthalate ("PET"), a chemical used to make a variety of different plastic products. (*Id.* ¶ 2); *see also E.I. DuPont de Nemours & Co. v. United States*, 841 F. Supp. 1237, 1239 (Ct. Int'l Trade 1993) (describing PET and its uses). Grupo Petrotemex owns the patents in suit, which generally relate to the crystallization of polymer pellets in the manufacture of PET. (Compl. ¶ 8.) Plaintiff DAK Americas is an American company and exclusive licensee of the patents in suit. (*Id.* ¶ 3.) DAK Americas supplies PET resins to the U.S. market for use in the manufacture of plastic containers for consumer goods. (*Id.* ¶ 3.) Defendant Polymetrix is a Swiss corporation that designs, engineers, supplies, and builds plants that manufacture PET. (*Id.* ¶¶ 4, 17.) Plaintiffs allege that Polymetrix develops and sells polymer processing equipment that practices Plaintiffs' patented inventions. (*Id.* ¶ 15.)

On March 7, 2018, Polymetrix moved to dismiss the lawsuit under Rule 12(b)(1) for lack of subject matter jurisdiction. (*See* Def. Polymetrix AG's Mot. to Dismiss Pls.' Compl. Pursuant to Fed. R. Civ. P. 12(b)(1) [Doc. No. 145].) The Court deferred ruling on the motion to dismiss and allowed for limited discovery into the question of subject matter jurisdiction. (*See* June 4, 2018 Minute Entry at 2 [Doc. No. 199].) As it relates to the instant motion, the Court allowed Plaintiffs to "follow up on their subpoena to [CBP] over the next ninety (90) days." (*See id.*)

### B. The Subpoena on CBP

On March 7, 2018, Plaintiffs served a subpoena on CBP seeking information that Plaintiffs allege is only available from CBP. (*See* Pls.' Mem. Supp. Mot. to Compel ("Mem. in Supp.") [Doc. No. 249] at 1–3; *see also* CBP's Opp'n Mem. [Doc. No. 262] at 2–3; Schweibenz Decl. [Doc. No. 250], Ex. A (Subpoena [Doc. No. 250-1]).) Initially, GPT/DAK requested

> 1. All documents, things, and communications regarding the shipments of polyethylene terephthalate described in Attachment 1 hereto.
>
> 2. Documents sufficient to show the identity of the shipper, importer, exporter, and/or consignee for the shipments of polyethylene terephthalate described in Attachment 1 hereto.
>
> 3. Documents sufficient to show the air waybill numbers for the shipments of polyethylene terephthalate described in Attachment 1 hereto.
>
> 4. Documents sufficient to show all importation into the U.S. of polyethylene terephthalate originating from Poland from January 1, 2015 to the present, including the identity of the shipper, importer, exporter, and/or consignee for each such importation.

> 5. Documents sufficient to show all importation into the U.S. of polyethylene terephthalate by Jiangyin Chengold Packaging Materials Co., Ltd. From January 1, 2016 to the present.

(Mem. in Supp. at 2; *see also* Schweibenz Decl., Ex. A (Subpoena at 10).)

In April 2018, CBP first denied the request, finding it procedurally improper under 19 C.F.R. § 103.22(c). (Schweibenz Decl., Ex. B (CBP Apr. 4, 2019 Letter at 38 [Doc. No. 250-1]) (stating the "request [did] not include a copy of the Summons and Complaint and it fails to demonstrate why the information is relevant and material to the action").)

Over the course of the meet and confer efforts that followed, Plaintiffs narrowed their request to "four (4) specific shipments of PET into the U.S. from Poland" and specifically requested "information sufficient to identify the shipper, importer, exporter, and consignee of these shipments." (Schweibenz Decl., Ex. D (Schweibenz Aff. ¶ 3 [Doc. No. 250-2]).) Plaintiffs stated that their request was consistent with 19 C.F.R. § 103.23, which defines the "[f]actors in determining whether to disclose information pursuant to a demand." (*See id.* ¶¶ 2–7); *see also* 19 C.F.R. § 103.23. For example, Plaintiffs noted their understanding that the information is unavailable from other sources. (*See* Schweibenz Decl., Ex. D (Schweibenz Aff. ¶ 6) (stating "unlike shipments by boat—information regarding the shipper, importer, exporter, and consignee of shipments into the U.S. by air are not publicly available through subscription services such as Datamyne. Indeed, neither party to this lawsuit has such information in its possession").) Based on Plaintiffs' understanding that such information for shipments by vessel is publicly available, they took issue with CBP's position that the equivalent information for air

4

shipments could properly be characterized as "confidential commercial information" under 19 C.F.R. § 103.23(b)(6). (*Id.* ¶ 18.)

Nevertheless, in August 2018, CBP declined to comply with the subpoena, asserting

1. that the documents are available from other sources, 19 C.F.R. § 103.23(a)(3)(iii);

2. that they are confidential commercial information, 19 C.F.R. § 103.23(b)(6);

3. that disclosure would unduly interfere with the orderly conduct of CBP business, 19 C.F.R. § 103.23(b)(8); and

4. that CBP has no interest, records, or other official information regarding the matter in which disclosure is sought, 19 C.F.R. § 103.23(b)(9).

(Mem. in Supp. at 3; *see also* Schweibenz Decl., Ex. E (CBP's Aug. 3, 2018 Letter at 2–3 [Doc. No. 250-3]).)

### C. Plaintiffs' Motion to Compel

On August 29, 2018, Plaintiffs filed a Motion to Compel Discovery from CBP [Doc. No. 248] ("Mot. to Compel"). Plaintiffs argued that CBP's refusal to comply with the subpoena violated § 706 of the Administrative Procedures Act ("APA"), calling the agency's decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." (Mem. in Supp. at 5) (internal quotations marks omitted).

CBP principally based its opposition to Plaintiffs' Motion to Compel on the second ground listed above, namely, that the information requested is "entry information," expressly prohibited from disclosure under 19 C.F.R. § 103.23(b)(6) and 18

5

U.S.C. § 1905. (*See* Mem. in Opp'n at 11–15 [Doc. No. 262].) Section 103.23(b)(6) provides that disclosure is prohibited where it "would improperly reveal confidential commercial information without the owner's consent (e.g., entry information)." 19 C.F.R. § 103.23(b)(6).

Magistrate Judge Hildy Bowbeer granted Plaintiffs' Motion to Compel. She found CBP's argument that entry information is *per se* confidential to be unreasonable, noting, among other things, that entry information from other modes of transportation is publicly available. (Order on Mot. to Compel at 8–10.) Further, Magistrate Judge Bowbeer observed that even if the information were confidential, § 103.23(b)(6) does not preclude its release under a protective order. (*Id.* at 10–11.) Finally, Magistrate Judge Bowbeer noted that CBP's reliance on other stated grounds (listed above, *supra* at 5) was unreasonable. (*Id.* at 11–15.) Accordingly, she found that CBP's decision to deny Plaintiff's request was arbitrary and capricious. (*Id.*)

This Objection followed. CBP argues that the magistrate judge's ruling is clearly erroneous and contrary to law for two reasons: (1) the ruling "relies on an incorrect comparison between CBP's treatment of confidential information from shipments arriving by vessel[1] as compared to shipments arriving by aircraft" under the Smoot-Hawley Tariff Act (the "Tariff Act"); and (2) the magistrate judge improperly applied the standard of review under the APA, which requires a narrow and deferential review of an agency decision. (CBP Obj. at 2.)

---

[1] As CBP notes, the term "vessel" includes "every description of water craft or other contrivance used, or capable of being used, as a means of transportation in water, but does not include aircraft." 19 U.S.C. § 1401(a).

6

Plaintiffs raise both procedural and substantive arguments in response to CBP's Objection. Procedurally, they argue that because the basis for the agency's Objection under the Tariff Act was not briefed by the parties in their submission to the magistrate judge, it cannot be considered in this appeal. (Pls.' Resp. to Obj. at 4.) Substantively, Plaintiffs contend that the magistrate judge properly applied the APA's standard of review, and that CBP's newly presented argument does not dictate a different result. (*Id.* at 11–13.)

## III. DISCUSSION

### A. Standard of Review

In reviewing an order from a Magistrate Judge, the Court must set aside portions of an order that are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Proc. 72(a); Local Rule 72.2.[2] Such an order is "clearly erroneous" when, after a thorough review of the record, the "court is left with the definite and firm conviction that a mistake has been committed." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting *Thorne v. Wyeth*, No. 06-cv-3123 (PAM/JJG), 2007 WL 1455989, at * 1 (D. Minn. May 15, 2007)). The order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting

---

[2] Plaintiffs argue that as a non-party, CBP has no right to seek review under this Court's Local Rules. (Pls.' Resp. to Obj. at 2.) Local Rule 72.2 permits the review of a magistrate judge's ruling on nondispositive matters. D. Minn. L.R. 72.2(a); *see also* Fed. R. Civ. P. 72(a). While the Rule refers to the procedure by which "a *party*" may obtain district court review, (D. Minn. L.R. 72.2(a)) (emphasis added), this Court has previously extended review to non-parties, *see, e.g., Datcard Sys., Inc. v. PacsGear, Inc.*, No. 11-mc-25 (DSD/SER), 2011 WL 2491366 (D. Minn. June 23, 2011), and likewise extends review here to CBP.

7

*Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

As Magistrate Judge Bowbeer properly observed, under the APA, CBP's determination in response to a request to produce documents and information, whether in the form of a "*Touhy* request"[3] or a subpoena, may be set aside only when it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Under this narrow standard of review, *see Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989), an agency decision may be deemed arbitrary or capricious if " the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 994 (8th Cir. 2016).

In evaluating an agency's decision, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Thus, an agency's

---

[3] The term "*Touhy* request" comes from the Supreme Court decision, *United States ex rel. Touhy v. Regan*, 340 U.S. 462 (1951). In *Tuohy*, the Supreme Court ruled that an FBI agent could not be held in contempt for refusing to obey a subpoena based on instructions given to him by the U.S. Attorney General pursuant to the regulations the Department of Justice had enacted under the Federal Housekeeping Statute. In so doing, the Court upheld the validity of agency regulations under the Federal Housekeeping Statute which constrain agency employees' authority to produce documents and information in response to a subpoena. Such regulations are sometimes referred to as *Touhy* regulations. *See Upsher-Smith Labs., Inc. v. Fifth Third Bank*, No. 16-cv-556 (JRT/HB), 2017 WL 7369881, at *2 n.1, *10 (D. Minn. Oct. 18, 2017) (Bowbeer, Mag. J.).

determination is arbitrary or capricious when it fails to "examine the relevant data" or "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). When a court conducts this analysis, it "is not to substitute its judgment for that of the agency." *Id.* Rather, if the agency's decision is supportable on any rational basis, the court must uphold it. *Foster v. Vilsack*, 820 F.3d 330, 333 (8th Cir. 2016). However, the government must demonstrate that it acted reasonably under the circumstances and reached a plausibly justifiable decision after following the appropriate processes and considering the appropriate factors. *Motor Vehicle Mfrs.*, 463 U.S. at 43; *Foster*, 820 F.3d at 333.

### B. Analysis

#### 1. Procedural Issues

CBP acknowledges that it did not squarely raise with Magistrate Judge Bowbeer the primary ground on which it now appeals. (*See* CBP Obj. at 6) It asserts that at the motion hearing, the magistrate judge *sua sponte* raised the question of the agency's different treatment of information concerning shipments by vessel versus shipments by aircraft. (*Id.* at 3.) CBP faults the magistrate judge's "incomplete understanding of the statutory and regulatory structure that governs information for shipments that arrive by vessel as compared to those that arrive by aircraft (and other means)," but concedes that "*[t]his issue was not briefed by the parties*." (*Id.*) (emphasis added). Thus, CBP argues, "the government did not have a sufficient opportunity to clarify the law prior to entry of the Order." (*Id.*) In particular, CBP asserts that "the Magistrate Judge did not have the benefit

9

of knowing" of a regulation that authorizes the disclosure of certain vessel shipment data in some circumstances, 19 C.F.R. § 103.31, whereas no similar regulation exists regarding air shipment data. (*Id.* at 6–7.) Notably, CBP did not cite 19 C.F.R. § 103.31 in its opposition to the Motion to Compel, nor did it cite that regulation's enabling statute, the Tariff Act, 19 U.S.C. § 1431.

The Eighth Circuit has recognized that in order to preserve an argument for appeal, a party must raise it at the first opportunity, noting that "even when a magistrate judge is hearing a matter pursuant to his or her limited authority to make a 'recommended disposition,' 'a claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review.'" *Madol v. Dan Nelson Auto. Group*, 372 F.3d 997, 1000 (8th Cir. 2004) (quoting *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000)). Otherwise, the "'purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court.'" *Roberts*, 222 F.3d at 470 (quoting *Reciprocal Exch. v. Noland*, 542 F.2d 462, 464 (8th Cir. 1976)).

Here, although CBP did not present its current argument to the magistrate judge, the magistrate judge briefly addressed distinctions between air and vessel shipment information in examining CBP's bases for claiming that the requested information was confidential. (Order on Mot. to Compel at 9.) Magistrate Judge Bowbeer noted that Plaintiffs had informed CBP that the requested information is generally available to the public with respect to shipments by vessel. (*Id.*) (citing Schweibenz Decl., Ex. D (Schweibenz Aff. ¶

10

18).) Rejecting CBP's argument that all entry information is *per se* confidential, the magistrate judge found that it strained credulity for CBP to suggest that the identity of a shipper, importer, exporter or consignee is confidential with respect to air-shipped goods, but not confidential with respect to vessel-shipped goods. (*Id.*) Although CBP did not raise with the magistrate judge the precise arguments that it raises in its Objection, in a broad sense, this issue was before the magistrate judge.

At the agency decision-making level, however, CBP did not base its refusal to comply with Plaintiffs' subpoena on confidentiality or disclosure differences between air shipment information and vessel shipment information.[4] (*See* Schweibenz Decl., Ex. B (CBP Apr. 4, 2018 Letter); *id.*, Ex. E (CBP Aug. 3, 2018 Letter).) As Plaintiffs note, "[w]hile a reviewing court cannot substitute its judgment for that of the agency, it also cannot 'supply a reasoned basis for the agency's action that the agency itself has not given.'" *Rhoads v. U.S. Dep't of Veterans Affairs*, 242 F. Supp. 3d 985, 994 (E.D. Cal. 2017) (quoting *Ky. Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 413 (6th Cir. 2013)). Here, CBP's August 3, 2018 determination did not invoke any differences in the agency's confidential treatment of air shipment information versus its treatment of vessel shipment information. But because the Court prefers to rule on the merits of CBP's Objection, it will do so. Even on the merits, however, the Objection fails.

---

[4] Rather, as noted earlier, it argued that: (1) the requested discovery was confidential commercial information, sought without obtaining the importer's consent; (2) Plaintiffs failed to demonstrate that the information is publicly unavailable; (3) as a general matter, third-party requests present a potential cumulative effect of embroiling CBP in outside controversies; and (4) under *Tuohy*, federal agencies may restrict the provision of information to those outside the agency. (Schweibenz Decl., Ex. E (CBP Aug. 3, 2018 Letter at 1–2.)

11

### 2. Whether CBP's Refusal to Comply with Plaintiff's Subpoena was Arbitrary and Capricious

CBP first argues that Magistrate Judge Bowbeer erred by failing to note that "the applicable law mandates that CBP treat confidential information related to shipments arriving by vessel differently than information arriving by aircraft." (CBP Obj. at 6.) CBP observes that 19 C.F.R. § 103.31 allows for the disclosure of certain vessel shipment data, but no similar regulation provides for a similar disclosure of air shipment data. (*Id.*) CBP identifies the regulation's enabling statute, the Tariff Act, 19 U.S.C. § 1431(c), as the source of this "regulatory dichotomy." Also, CBP relies heavily on *Panjiva, Inc. v. U.S. Customs & Border Protection*, a recent case from the Southern District of New York holding that this distinction between vessel manifests and aircraft manifests is reasonable and supported by the statutory and legislative history. No. 17-CV-8269 (JPO), 2018 WL 4572251, at *9 (S.D.N.Y. Sept. 24, 2018).

In response, Plaintiffs take issue with CBP's characterization that any aircraft/vessel distinction was "key" to the magistrate judge's ruling. (Pls.' Resp. to Obj. at 11–13.) Rather, Plaintiffs assert that this distinction was but one of "at least *five independent* reasons" supporting Magistrate Judge Bowbeer's finding that CBP's decision was arbitrary and capricious. (*Id.*) (emphasis in original.) Further, Plaintiffs argue that *Panjiva* is distinguishable from the facts of this case and therefore lacks persuasive authority.

The Court agrees with both of Plaintiffs' arguments. Granted, CBP is correct that there is a specific regulation applicable to the agency's public disclosure of vessel

manifests, but there is not a corresponding regulation applicable to the public disclosure of aircraft manifests. But the lack of a regulation does not mean that the disclosure of aircraft manifest information is prohibited, despite the fact that CBP apparently treats public disclosures concerning these two shipping modes differently. (*See* CBP Obj. at 9.)

One rationale for the "reasonableness" of the agency's distinction between vessel and aircraft manifests, provided in CBP's Objection, is that "[a]s compared to vessel shipments, shipments arriving by aircraft are voluminous, encompassing all international FedEx and UPS shipments sent to individuals as well as businesses." (*Id*. at 12) (citing Bart Elias, *Security of Air Cargo Shipments, Operations and Facilities*, Congressional Research Service at 2, 6 (Jan. 24, 2018) (available at https://fas.org/sgp/crs/homesec/R45082.pdf)). But the authority on which CBP relies only discusses air cargo shipments, with no comparative volume assessment between aircraft and vessel shipments to the United States. And, contrary to CBP's assertion, it appears that vessel shipments into the United States are "voluminous" as compared to aircraft shipments.[5] CBP fails to provide a reasonable explanation for this distinction. In any event, this distinction was not "key" to Magistrate Judge Bowbeer's order. Her order provides several additional reasons in support of her finding that CBP's refusal to comply with the subpoena lacks a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

---

[5] See, e.g., Matthew Chambers and Mindy Liu, *Maritime Trade and Transportation by the Numbers*, Bureau of Transportation Statistics, at 1 (May 20, 2017) (available at https://www.bts.gov/sites/bts.dot.gov/files/legacy/publications/by_the_numbers/maritime_trade_and_transportation/pdf/entire.pdf) (explaining that vessel freight made up 53% of all U.S. imports in 2010, compared to only 22% for aircraft freight).

Further, Plaintiff's reliance on *Panjiva* is inapposite, as *Panjiva* is distinguishable from the facts here. In *Panjiva*, the plaintiffs filed a Freedom of Information Act request that sought six months of information for all air shipments into the United States in order to prepare a report to customers. 2018 WL 4572251, at *3. This broad and commercial-oriented request stands in contrast to the narrow request here, where, pursuant to a subpoena, Plaintiffs seek information regarding only four shipments relevant to this lawsuit. Moreover, at the hearing on Defendant's Motion to Dismiss, the Court specifically directed Plaintiffs to follow up on the subpoena to CBP. (June 4, 2018 Minutes at 2.) In addition, a protective order exists in this case to preclude public disclosure of the information, whereas in *Panjiva,* public disclosure was arguably the purpose of the request, as the plaintiffs sought to analyze and aggregate CBP's shipment data for their commercial benefit.[6] 2018 WL 4572251, at *1. For these reasons, *Panjiva*

---

[6] Moreover, even if *Panjiva* were factually similar, the Court disagrees with the *Panjiva* court's interpretation of the Tariff Act. The *Panjiva* court's reading of 19 U.S.C. § 1431(c)(1), and CBP's argument here, requires an interpretation contrary to the statute's plain language—in other words, that information contained in aircraft manifests is *not* available for public disclosure. But the plain language of the statute is to the contrary. 19 U.S.C. § 1431(c)(1) (stating, in the section of the statute on "[p]ublic disclosure of certain manifest information," that various information, including the name and address of the applicable importers, consignees, or shippers, "when contained in a vessel vessel or aircraft manifest, shall be available for public disclosure.") (repeated word in original).

"When reviewing an agency's construction of a statute it administers, a court must first ask whether Congress has directly spoken to the precise question at issue." *Glover v. Standard Fed. Bank*, 283 F.3d 953, 961 (8th Cir. 2002) (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Bottoms Farm P'ship v. Perdue*, 895 F.3d 1070, 1073 (8th Cir. 2018).

is inapposite.

In sum, the Court is not persuaded that Magistrate Judge Bowbeer's brief reference to an aircraft/vessel distinction renders her entire order "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

CBP next argues that Magistrate Judge Bowbeer erred in not giving deference to CBP's determination that all "entry information" is *per se* "confidential commercial information." (CBP Obj. at 10–11.) CBP also argues that its interpretation of "improper" in 19 C.F.R. § 103.23(b)(6) was entitled to deference. (*Id.* at 11–13.) These arguments fail.

First, the Court agrees with Magistrate Judge Bowbeer that not all "entry information" is *per se* confidential. Magistrate Judge Bowbeer noted that the requested

---

A review of the statutory text makes plain that "aircraft manifest[s] shall be available for public disclosure." 19 U.S.C. § 1431(c)(1). While the repetition of the word "vessel" directly before this portion of the statute suggests a possible drafting error regarding vessel manifest disclosures, vessel manifest disclosures are not at issue in this objection. All that CBP places at issue here is whether aircraft manifests are available for public disclosure, a question that the statute's text unambiguously answers in the affirmative.

The *Panjiva* court found that differences between the codified statute and individual enactments created ambiguity, leading the court to examine the legislative history. 2018 WL 4572251, at *4–5. However, the court's analysis of that history was incomplete, as it did not consider how the retroactive effective date of the Miscellaneous Trade and Technical Corrections Act of 1996 impacted a reading of the text, as well as an understanding of the legislative history and underlying congressional intent. Nor did the court note that from 1997 to 2002, CBP maintained a prospective regulation entitled "Public Disclosure of Aircraft Manifests" on its "Long-Term Actions" regulations list, suggesting that for at least that time period, CBP sought to create a regulation parallel to the vessel regulation, and consistent with the plain language of the Tariff Act, as to aircraft manifests. *See, e.g.*, 62 Fed. Reg. 57976–77 (clarifying that the "Public Disclosure of Aircraft Manifests" regulation would "implement section 11 of the [ACPA] which amended section 431 of the Tariff Act of 1930 to provide for the public disclosure of information on aircraft manifests and to include trademarks among the types of manifest information that are subject to disclosure…").

15

information is publicly available for shipment by vessel. (Order on Mot. to Compel at 9.) Further, as noted by Magistrate Judge Bowbeer, Plaintiffs have identified many pieces of information pertaining to the shipment that are currently in the public domain, namely the harmonized system product numbers for the contents of the shipments, the value of the shipped goods, and the product name. (*See* Order on Mot. to Compel at 9–10.) Given that this information is also likely contained in the aircraft manifests sought by the Plaintiff, CBP should have explained why certain aspects of the information sought were still confidential and not subject to disclosure. Finally, given the conclusion of this Court concerning 19 U.S.C. § 1431(c)(1)'s mandate to make aircraft manifests available for public disclosure, CBP's argument that such manifests are confidential and thus not disclosable is in clear conflict with a plain reading of 19 U.S.C. § 1431(c)(1).

Second, the Court also agrees with Magistrate Judge Bowbeer that in refusing to comply with the subpoena, CBP fails to consider whether such a disclosure would be "improper" under § 103.23(b)(6). (*See* Order on Mot. to Compel at 10.) While CBP did not provide an interpretation of "improper" in its original briefing in opposition to the Motion to Compel, it newly states in its Objection that it "interprets the term 'improperly' in the context of Plaintiffs' request to mean that disclosure of confidential commercial information (entry information) would be improper *without the owner's consent*, and thus a 'proper' disclosure of such entry information can be made with the owner's consent." (CBP Obj. at 11) (emphasis in original). This interpretation is subject to the same criticism that Magistrate Judge Bowbeer originally outlined, namely, that it fails to "give effect . . . to every word of the statute." *See Bowsher v. Merck & Co., Inc.*, 460 U.S. 824, 833 (1983)

16

(addressing statutory construction). This interpretation renders the word "improperly" superfluous within 19 C.F.R. § 103.23(b)(6).[7] As such, this new interpretation is unreasonable and not entitled to deference. CBP has still not reasonably "considered whether there could be a 'proper' disclosure of the confidential commercial information," (Order on Mot. to Compel at 10), and specifically whether "proper" disclosure could be effectuated by a protective order. The Court therefore agrees that "CBP failed to articulate why producing the information under the protective order in the circumstances of this case would be improper," (*id.* at 12), and holds that in refusing to comply with the limited information requested in the subpoena on grounds of confidentiality, CBP fails to provide a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

The Court assigns no error to the magistrate judge's findings and her application of the APA to these facts.

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. U.S. Customs and Border Protection's Objection to the Order on Plaintiffs' Motion to Compel [Doc. No. 286] is **OVERRULED**;

2. Magistrate Judge Bowbeer's Order of September 21, 2018 [Doc. No. 275] is **AFFIRMED**;

---

[7] CBP's interpretation would have 19 C.F.R. § 103.23(b)(6) read "(6) Disclosure would <u>without the owner's consent</u> reveal confidential commercial information without the owner's consent (e.g. entry information)." (underlined portion representing CBP's interpretation of the word "improperly.") Such an interpretation renders the word "improperly" in that sentence superfluous and renders the rest of the phrase redundant.

3. Within seven (7) days of this Order, U.S. Customs and Border Protection must provide information sufficient to identify the shipper, importer, exporter, and consignee regarding the four specific shipments of PET into the United States from Poland, as identified in Plaintiffs' Subpoena and attachments thereto;

4. This information will be produced subject to the terms and provisions of the Protective Order [Doc. No. 69] in this matter; and

5. Once the requested information has been produced, the Court will entertain additional briefing to determine if Article III standing is established. The parties shall present a proposed briefing schedule to the Court no later than November 9, 2018.

Dated: October 26, 2018

s/Susan Richard Nelson  
SUSAN RICHARD NELSON  
United States District Judge