| | |
|---|---|
| Grupo Petrotemex, S.A. De C.V. and DAK Americas LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Polymetrix AG,<br><br>Defendant. | Case No. 16-cv-2401 (SRN/HB)<br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiffs Grupo Petrotemex, S.A. De C.V. and DAK Americas LLC's ("GPT/DAK") Renewed Motion to Compel [Doc. No. 416]. For the reasons set forth below, the Court grants in part and denies in part the motion.

**I.  BACKGROUND**

At the Court's invitation, GPT/DAK has renewed their Second Motion to Compel [Doc. No. 148], the particulars of which have been discussed by this Court in several prior orders, including its Orders of June 28, 2018 [Doc. No. 210], and February 25, 2019 [Doc. No. 398]. The Court had deferred resolution of the full scope of GPT/DAK's Second Motion to Compel while Polymetrix's Motion to Dismiss was pending and discovery in this case was limited to material pertinent to the issue of subject matter jurisdiction. However, Polymetrix's motion was denied by the Honorable Susan Richard Nelson, United States District Judge, *see* (Mar. 5, 2019, Mem. Opinion & Order [Doc.

No. 408]), and this Court has determined that discovery should now proceed on all issues. *See* (Apr. 22, 2019, Order [Doc. No. 424 at 2].) The Court will not provide a full recitation of the facts or procedural posture of the instant motion, and instead incorporates by reference the factual underpinnings and relevant background set forth in its June 28, 2018, and February 25, 2019, orders. In short, the Court is now tasked with determining whether Polymetrix may properly withhold pursuant to Swiss law any documents that it has determined to be responsive to GPT/DAK's discovery requests beyond those that the Court previously ordered Polymetrix to produce on subject matter jurisdiction. Put another way, the Court must determine to what extent Polymetrix must produce additional documents pursuant to Federal Rule of Civil Procedure 34, and whether and to what extent GPT/DAK will be required to pursue certain documents through the processes established by the Hague Convention for the Taking of Evidence Abroad.

## II. DISCUSSION

### A. Legal Standard

When it is necessary to seek evidence abroad, "the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). American law has "long recognized the demands of comity in suits involving . . . sovereigns with a coordinate interest in the litigation." *Id.* at 546. In suits involving extraterritorial discovery, "[t]he exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and . . .

the governments whose statutes and policies they invoke." *Id.* However, that evidence sought is subject to a foreign nation's blocking statute does not necessarily prevent an American court from ordering a party to produce it. *Id.* at 544. Furthermore, "[a] review of case law reveals that courts have not looked favorably on blocking statutes." *Skky, Inc. v. Thumbplay Ringtones, LLC,* No. 13-cv-2072 (PJS/JJG), 2014 WL 11429038, at *5 (D. Minn. Apr. 4, 2014) (Graham, Mag. J.).

The party opposing discovery of relevant, non-privileged information has "the burden of establishing some good cause or sound reason for blocking disclosure." *Rolscreen Co. v. Pella Prod. of St. Louis, Inc.*, 145 F.R.D. 92, 95 (S.D. Iowa 1992); *see also In re: Nat'l Arbitration Forum Litig.*, No. CV 09-1939 (PAM/JSM), 2010 WL 11469529, at *3 (D. Minn. Feb. 16, 2010) (Mayeron, Mag. J.) (it is "axiomatic" that the resisting party bears the burden of explaining why discovery should be limited). Thus, the party relying on foreign law to resist discovery has the burden to show such law applies to the discovery at issue. *See, e.g., United States v. Vetco, Inc.*, 691 F.2d 1281, 1288 (9th Cir. 1981). Furthermore, a party seeking to require that discovery be obtained through Hague Convention international discovery procedures must "demonstrate appropriate reasons for employing [them]." *Aerospatiale,* 482 U.S. at 547.

**B.    Analysis**

In its opposition to GPT/DAK's Second Motion to Compel, Polymetrix based its resistance to producing certain concededly relevant and responsive documents on Article 162 and Article 273 of the Swiss Criminal Code. To be clear, Polymetrix did not take the position that either of these laws precludes it from producing its own confidential

3

information.  Instead, it asserted that Swiss law precludes it from producing confidential third-party information in its possession, and that the third-party information is so intertwined with Polymetrix's information that there is no practicable way to redact the former and produce the latter.  *See, e.g.,* (Def. Polymetrix AG's Mem. of Law in Opp'n to Pls.' Mot. to Compel Discovery, "Def.'s Mem. in Opp'n to Mot. to Compel" [Doc. No. 91 at 2].)  Before proceeding to the question of whether the Swiss blocking statutes should be understood to apply to and preclude the production of documents by Polymetrix, however, the Court must first address the proper scope of discovery in this case.

### 1.     The Proper Scope of Discovery

GPT/DAK's complaint alleges that Polymetrix induced infringement of the patents-in-suit, thereby subjecting it to liability under 35 U.S.C. §§ 271.  *See* (Compl. [Doc. No. 1 ¶¶ 20, 27–28, 33–34, 39–40].)  But, as GPT/DAK acknowledged in its opposition to Polymetrix's motion to dismiss, the complaint does not allege direct infringement under 35 U.S.C. § 271(a).  *See* (Opp'n to Def.'s Mot to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(1), "Opp'n to Mot. to Dismiss" [Doc. No. 161 at 2–3, 11–12].)  Furthermore, although the Complaint does not specify the origin of the PET allegedly made using the accused EcoSphere™ technology, the evidence and argument adduced in connection with the motion to dismiss made it abundantly clear that the only competent evidence GPT/DAK has regarding the importation into the United States of such PET relates to PET manufactured at a plant located in Wloclawek, Poland owned by Indorama Ventures Poland Sp. Z.O.O (hereinafter the "Indorama Poland plant"), which

Polymetrix had "revamped" to incorporate the EcoSphere™ technology. *See generally* (Mar. 5, 2019, Mem. Opinion & Order at 9–15.) Yet GPT/DAK's requests to Polymetrix seek wide-ranging information about the marketing, advertising, commercialization, sale, and offer for sale of the EcoSphere™ technology to any customer for any plant located anywhere in the world.[1]

The Court has not forgotten that Polymetrix explicitly withdrew any relevance objections to GPT/DAK's requests that it might have asserted under the Federal Rules of Civil Procedure. *See* (Def.'s Mem. in Opp'n to Mot. to Compel at 2.) But the Court has its own independent obligation under Rule 1 to assure that discovery in this case does not become a fishing expedition but instead is focused on matters for which there is some foundation in the record, and it concludes that the scope of discovery sought by GPT/DAK's requests go far beyond the bounds of discovery that are reasonably implicated by the claims and the record in this case.

Accordingly, the Court denies GPT/DAK's motion to the extent it seeks to compel responsive information or documents regarding the offer for sale, sale, installation, or support of the EcoSphere™ technology to or for any specific customer other than (1) Indorama, its customers or affiliates, or (2) a customer to or for whom it has offered to sell the Ecosphere™ technology to be operated in the United States. Thus, for example, the Court will not compel discovery into activities, products, or facilities in

---

[1] *See, e.g.*, GPT/DAK's Interrogatory No. 2 [Doc. No. 86-1 at 114] and Document Request Nos. 41–43 [Doc. No. 86-1 at 136].

China, such as the PET plant under construction for Jiangyin Chengold Packaging Materials Co., Ltd.[2] This limitation should be read narrowly, however, in that the Court does not intend to preclude reasonable and proportional discovery into documents that, although they may pertain to another customer, are relevant to the claims and issues in this case for some other reason, such as documents that that describe the development of the Ecosphere™ process itself or documents that analyze the claims of the patents-in-suit and whether they read on the EcoSphere™ process; or documents that are relevant to matters that Polymetrix itself puts in issue, such as if Polymetrix asserts that another customer installation was prior art or that the success of another customer installation demonstrates the availability of an acceptable non-infringing alternative design.

Accordingly, the Court addresses the issues raised by this motion in the context of this narrowed scope of discovery.

### 2. Article 162

Turning first to Article 162, Polymetrix argued that the law forbids it to produce the requested documents because disclosure of the information contained therein would breach both contractual and legal obligations to maintain the secrecy of another party's confidential information. (Richa Decl. [Doc. No. 94 ¶¶ 43, 45–48].) Polymetrix identified a few written contracts that it asserted contained express obligations of

---

[2] *See, e.g.*, GPT/DAK's First Set of Requests for Production Nos. 25 and 26. [Doc. No. 86-1 at 35–36.] The Court notes that GPT/DAK itself protested in response to Polymetrix's motion to dismiss that its Complaint "does not . . . even so much as mention any China plant whatsoever." (Opp'n to Mot. to Dismiss at 4.)

confidentiality,[3] but its primary argument was that it had oral or implied contractual obligations with a number of customers and business partners that required it to keep their information confidential, and that Swiss law recognizes such implied contracts. Polymetrix also argued that the Swiss Federal Unfair Competition Act[4] and the Swiss Data Protection Act[5] impose an additional legal duty to keep third-party confidential information secret. Accordingly, Polymetrix argues it has multiple legal and contractual bases for withholding the confidential information of its customers and business partners, which in turn trigger the prohibitions on disclosing them in Article 162.

In its June 28, 2018, Order, the Court concluded that Polymetrix did not meet its burden of establishing that Article 162 of the Swiss Criminal Code barred production of responsive documents pertaining to the limited scope of discovery surrounding Polymetrix's then-pending Motion to Dismiss. *See* (June 28, 2018, Order at 18–23.) The Court noted that Article 162 applies only "when there is a legal duty to prevent the disclosure of manufacturing or business secrets," and that therefore, "knowing whether there are actual agreements in place is critically necessary for understanding whether

---

[3] *See* (Müller Decl. [Doc. No. 93 ¶¶ 6, 11–12]; Müller Decl. Exs. A-B [Doc. Nos. 93-1 to 93-2].) Particularly, Polymetrix identified an express obligation of confidentiality in its contract with Jiangyin Chengold. (Müller Decl. ¶ 12.)

[4] The Swiss Federal Unfair Competition Act provides that "behavior or business practice qualifies as unfair and illegal if it is deceptive or if it infringes in any other way the principle of good faith, and if it affects the relationship between competitors or between suppliers and customers." (Richa Suppl. Decl. ¶ 14.)

[5] Polymetrix describes the Swiss Data Protection Act as imposing an obligation to protect the personal data of its customers, including a prohibition against transmitting such personal data to third parties. (Richa Suppl. Decl. ¶¶ 19–22.)

7

Article 162 applies." But as that Order pointed out, Polymetrix never linked specific express contractual obligations of confidentiality to any of the relevant, responsive documents it sought to withhold, and while Polymetrix's expert stated that a confidentiality obligation may be implied under Swiss contract law "depending on the circumstances," (Richa Suppl. Decl. [Doc. No. 170 ¶ 26]), the Court observed that Polymetrix's expert had not described what those "circumstances" were or the specific nature of the "confidentiality obligation" that could be implied therefrom. Moreover, the expert never described the circumstances of Polymetrix's particular relationships with its business partners, and never opined that those circumstances and relationships did in fact give rise to an implied confidentiality obligation. *See* (June 28, 2018, Order at 18–19.)

Thus, with regard to Article 162, the Court found that Polymetrix had not met its burden to establish that confidentiality agreements are in effect that would prevent it from disclosing the information then at issue. (*Id.*) As a result, the Court ordered Polymetrix to produce documents relevant to subject matter jurisdiction because it had made "no convincing legal or factual argument that the circumstances of its relationship with Indorama Poland with respect to the particular information that is the subject of [that] Order gave rise to such an implied and absolute duty of confidentiality, particularly where, as here, effective protections are in place to assure that the information elicited would not be disclosed to competitors or used for any purpose other than this case." (*Id.* at 19.)

For the most part, the same deficiencies in Polymetrix's attempted showing with regard to Article 162 that the Court identified in its June 28, 2018, Order are present

8

when the Court looks at the expanded scope of documents that would be relevant and responsive under Federal Rule of Civil Procedure 26(b).  In addition, although not specifically noted in its prior order, Polymetrix's evidence with regard to its contractual relationships, express or implied, says nothing about the age of the information, how long ago it came into Polymetrix's possession, the duration of the purported confidentiality obligation, or the extent to which other entities to which the information has been disclosed were similarly—or not—bound.  Thus, with one exception, Polymetrix's attempted showing that Article 162 would block production of the information sought by GPT/DAK fails because it has not demonstrated that there are express confidentiality obligations currently in effect and applicable to specific documents that would otherwise be discoverable, nor has it made a specific showing of particular circumstances that establish applicable implied contractual obligations of confidentiality.

However, the Court is persuaded that Polymetrix has, to some extent, demonstrated that it has at least an implied obligation of confidentiality with regard to the technical, engineering, and manufacturing drawings and specifications for the EcoSphere™ process.  Polymetrix points out that to corral the expertise necessary to design and build a highly complex industrial plant, it must collaborate with sub-suppliers and other industrial firms to work through the technical details that are inherent to such a project. (Müller Decl. ¶¶ 3, 6.)  It must also communicate with its customer about confidential technologies the customer itself may seek to deploy in the plant that Polymetrix designs.  (*Id.* ¶¶ 3–9.)  Both types of communications necessarily require sharing proprietary technical information that is then incorporated into design,

engineering, and construction documents. (*Id.*) That Polymetrix cannot identify line by line what is confidential and proprietary and what is not does not mean that there is not proprietary information embedded therein, or that the specifications and drawings as a whole do not have a value that depends on their being maintained confidential. *See AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011) ("Compilations of non-secret and secret information can be valuable so long as the combination affords a competitive advantage and is not readily ascertainable."). If this information were Polymetrix's alone, the Court would have no difficulty finding that Polymetrix has waived any objection to producing it (subject, of course, to a protective order). But Polymetrix witnesses aver, and GPT/DAK does not seriously contest, that there is confidential technical information of Polymetrix's business partners intertwined with Polymetrix's own contributions, and it is not difficult to believe that there is at least an implied understanding that the proprietary technical contributions of those partners will be kept confidential. *See, e.g.*, (Müller Decl. ¶ 8):

> Polymetrix and the sub-supplier or cooperation partner understand that there is a duty of confidentiality with respect to each other's business and manufacturing secrets that are used in connection with Polymetrix's specific project or proposal. This implied relationship of trust and confidence with its sub-suppliers and cooperation partners is extremely important to Polymetrix's ability to do business. If Polymetrix were to disclose the business or manufacturing secrets of its sub-suppliers or cooperation partners without their permission, there would be a strong likelihood that Polymetrix would lose its relationship with these entities.

The Court is also persuaded that it would be difficult if not impossible to redact the drawings and specifications so as to mask only the confidential technical information of Polymetrix's partners, and the resulting documents likely would be useless in any

event.  Accordingly, the Court finds it likely that Article 162 would apply to technical, engineering, and manufacturing drawings and specifications for the EcoSphere™ process even within the narrowed scope of discovery as described in Section II.B.1 above.

### 3. Article 273

Polymetrix argues that Article 273 prevents it from disclosing any third-party manufacturing or business secret to a foreign entity regardless of whether it has a contractual obligation to keep it secret.  (Richa Decl. ¶¶ 29, 32; Richa Suppl. Decl. ¶ 17; Fischer Decl. [Doc. No. 87 ¶ 21].)  Hence, Polymetrix argues, even if its relationships with its customers and business partners are not subject to formal, written confidentiality agreements, Article 273 prevents it from disclosing most if not all of the documents sought by this motion because by their nature they contain third-party business and manufacturing secrets.

In its June 28, 2018, Order, the Court noted that although Article 273 does not depend upon the presence of contractual obligations, *see* (June 28, 2018, Order at 20), it "is much narrower in scope" and applies only where the "manufacturing or business secret . . . bear[s] a close relationship to Switzerland under the 'Binnenbeziehung' test." (*Id.* (citing Fischer Decl. ¶ 16).)  Specifically, the "test is met if 'the master of the secret (i.e., the beneficiary of the right to secrecy) is a Swiss resident, a Swiss legal entity, or if the secret otherwise falls within the ambit of Swiss sovereignty rules.'"  (*Id.* (quoting Fischer Decl. ¶ 16).)  The Court concluded that the limited jurisdictional discovery did not implicate Article 273 because the information being sought dealt largely with shipping activities of PET into the United States from Poland and could not "be credibly

characterized as falling within the Binnenbeziehung test." (*Id.*)

Similarly, with regard to the expanded scope of documents now at issue, Polymetrix has failed to show that the "master" of any particular secret—other than Polymetrix itself —is a Swiss resident or a Swiss legal entity, or that the secret "otherwise falls within the ambit of Swiss sovereignty rules." Certainly that is not the case with Indorama Poland, and although Polymetrix states that it has hundreds of subcontractors who may have contributed "secrets," it has provided no concrete basis to conclude that any of the documents that are at issue here in fact contain secrets that fall within the Binnenbeziehung test. Accordingly, the Court finds that Polymetrix has not sustained its burden of demonstrating that Article 273 would block the disclosure of documents and information sought by GPT/DAK and within the narrowed scope of discovery the Court has identified.

### 4. Balancing of Interests

Finding that Article 162 has application to technical, engineering, and manufacturing drawings and specifications for the EcoSphere™ process does not end this Court's inquiry; the Court must yet determine whether the balance of the interests lies in favor of deferring to the Swiss blocking statute and requiring that GPT/DAK proceed under the Hague Convention to gain access to this information.

When a foreign party relies on foreign law to resist production of discoverable information, a court should balance its interests with the interests of the foreign sovereign. *In re Baycol Products Litigation*, MDL No. 1431 (MJD/JGL), 2003 WL 22023449, at *6 (D. Minn. Mar. 21, 2003) (Lebedoff, Mag. J.). To do so, courts may

consider the following five factors: (1) The importance to the litigation of the information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means to obtain the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the foreign country. *Aerospatiale*, 482 U.S. at 544 n.28.

Here, there is no question that the information sought, within the scope described earlier in this Order, is critically important to the litigation. Within that information is the very information necessary for the parties to explore how precisely the Ecosphere™ process is being practiced in the Indorama Poland plant from which the accused product is alleged to have emanated, as well as information pertinent to other elements of GPT/DAK's claim that Polymetrix induced the infringement of the patents-in-suit. While Polymetrix seeks to draw a sharp distinction between information pertinent to its anticipated motion for summary judgment on elements of induced infringement, and all other information that may be relevant to the claims and defenses in this case, the Court is not persuaded that those distinctions are easily made, and the parties' inability to reach agreement on even the smallest issues in this case underscores that perception. The first factor therefore strongly weighs against deferring to the blocking statute and in favor of requiring production per the Federal Rules.

As to the second factor—specificity—on the one hand GPT/DAK's discovery requests are quite broad, even as narrowed by this Order. On the other, they have apparently been specific enough for Polymetrix to be able to represent with seeming

confidence that it has gathered all responsive documents.  Therefore, the Court finds that this factor is neutral.

The third factor—whether the information originated in the United States—weighs in favor of deferring to the blocking statute, as there is no question that most if not all of the information sought originated outside the U.S.

The fourth factor weighs slightly in favor of deferring to the blocking statute, as there are alternative means available to seek the information, i.e., through the Hague Convention.  That being said, there is no certainty about the outcome of that process, and the Court is concerned about the amount of time required to pursue it, particularly in light of the fact that for reasons largely not attributable to GPT/DAK, this case is now nearly three years old.

The determinative factor here, therefore, is the final one, i.e., the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the foreign country.  *Aerospatiale*, 482 U.S. at 544 n.28.  But because of the lack of specificity of Polymetrix's showing, it is difficult to assess fully the importance of Switzerland's interests in the application of Article 162 to the information at issue here.  Polymetrix's expert simply states that the purpose of Article 162 is to protect the "individual interests" of the person who wishes to have confidentiality maintained, a goal that the statute accomplishes by prohibiting disclosure of a manufacturing or business secret to third parties in breach of a legal or contractual obligation to maintain the secrecy of that

information.[6] (Richa Decl. ¶ 45.) Presumably, although the expert does not say so explicitly, this serves Switzerland's national economic interest by assuring entities who deal with Swiss firms like Polymetrix that they can be confident that their business secrets will be well-protected. But the protective order that the Court has entered in this case also serves that purpose, by precluding disclosure to anyone not within the permitted group (according to the designated level of confidentiality), and by prohibiting outright any use of the protected information for any purpose beyond this case. *See generally* (Protective Order [Doc. No. 69.]). Moreover, Polymetrix's imprecise showing as to what is secret and what is not, over how many entities in how many countries that information may be spread, and how and to what extent and for what duration obligations of confidentiality became attached to that information, further undermines the idea that there is a robust national interest in enforcing those obligations with regard to the broad sweep of the information Polymetrix insists it is required to protect.

By contrast, the interests of this Court and this country in timely compliance with discovery are obvious and significant, due in part to "the overriding interest in the just, speedy, and inexpensive determination of litigation in our courts." *Aerospatiale,* 482 U.S. at 543 (internal quotation marks omitted); *see also In re Meta Systems*, 111 F.3d 142 (Fed. Cir. 1997) (holding the International Trade Commission correctly decided not

---

[6] This stands in contrast to Article 273, which is aimed at "protecting manufacturing and other business secrets of persons and entities based in Switzerland to safeguard Switzerland's economic integrity" and which, "[c]ontrary to other criminal provisions whose purpose is to protect the person having an interest in the non-disclosure of a particular fact . . . , was primarily adopted to upheld Switzerland's interests as a sovereign State." (Richa Decl. ¶ 33.)

15

to apply Hague Evidence Convention procedures where such procedures "would not be a timely and effective means" of conducting depositions within the target date for completing the investigation); *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 310 (N.D. Ill. 1997) (concluding the "use of the Convention . . . to be an unnecessary, complicated, time consuming, and expensive means of discovery, thus thwarting the interests of our court system"); *Benton Graphics v. Uddeholm Corp.*, 118 F.R.D. 386, 391, 10 Fed. R. Serv. 3d 114 (D.N.J. 1987) (concluding "Convention procedures will [not] prove effective" because "of the lengthy history of discovery in this case and the potential for additional delays").

There is no formula by which to measure and weigh these competing interests, but the Court concludes that as to the documents within the permissible scope of discovery it has identified—information that goes to the heart of the matters at issue in this case—the balance of interests weighs in favor of compelling production of all such documents pursuant to Fed. R. Civ. P. 34, save only what is redacted or withheld on grounds of privilege or work-product protection, and against deferring to Article 162 and requiring discovery through the Hague Convention. Thus, as to those documents, the Court will grant GPT/DAK's motion to compel. Such documents may, of course, be produced as Confidential or Attorneys' Eyes Only under the Protective Order in this case, to the extent Polymetrix has a good faith belief that they contain proprietary or confidential business or technical information belonging to Polymetrix and/or to others. If an otherwise responsive document contains distinct sections that discuss specific customers that fall outside the scope of permissible discovery as defined in this Order, Polymetrix

may redact those sections. On the other hand, if a document contains information within the permissible scope of discovery as defined above in this Order intermingled with information that specifically pertains to another customer, Polymetrix may not redact that information unless it can show an express written obligation of confidentiality applicable to that information that was in effect at the time the document was generated and that remains operative. In either case, Polymetrix must produce a log identifying the redactions and the basis for them within 10 days of the production of the documents themselves, and as to any redaction of intermingled information, it must include the basis for its claim of an express, currently operative confidentiality obligation. The log may be designated Attorneys' Eyes Only if any information contained therein is competitively sensitive. Relevancy redactions on any other grounds will not be permitted.

### III. CONCLUSION

For these reasons, the Court concludes that Polymetrix must promptly produce to GPT/DAK pursuant to Rule 34 of the Federal Rules of Civil Procedure all relevant documents responsive to Plaintiffs' "February 7, 2017 requests for production of documents from Polymetrix," that Plaintiffs identified in their second motion to compel. *See* (Mem. in Supp. of Pls.' Second Mot. to Compel [Doc. No. 150 at 1].) This includes those documents it has represented it has already gathered in connection with the instant case (as referred to, *inter alia,* in the Declaration of Martin Müller [Doc. No. 93 ¶ 14] and Polymetrix's Memorandum in Opposition [Doc. No. 91 at 15] to Plaintiffs' First Motion

to Compel [Doc. No. 83]), to the extent those documents are within the scope of permissible discovery as described herein.

The Court recognizes the obligation imposed by this Order is in some ways narrower and in other ways broader than the result the Court signaled in its Order of April 22, 2019, and that therefore the time frame for compliance may be different from the time frame hitherto discussed between the parties.  On the other hand, the Court expects that the time required for compliance should be shorter than previously anticipated in view of the fact that the documents have been gathered, redactions should be limited, and the lines more clear between what is and what is not in scope.  The parties are ordered to meet and confer in light of this Order and to e-file a joint proposed scheduling order, including a deadline for compliance with this Order, on or before June 3, 2019.

Accordingly, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that GPT/DAK's Renewed Second Motion to Compel [Doc. No. 416] is **GRANTED IN PART** and **DENIED IN PART** as described herein.

Dated:  May 24, 2019         s/ *Hildy Bowbeer*
                             HILDY BOWBEER
                             United States Magistrate Judge

18