# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Grupo Petrotemex, S.A. de C.V. and DAK Americas LLC,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Polymetrix, AG,<br><br>　　　　　　　Defendant. | Case No. 16-cv-02401 (SRN/HB)<br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge

Plaintiffs Grupo Petrotemex, S.A. de C.V. and DAK Americas LLC (hereafter referred to collectively as "GPT/DAK") move to compel Defendant Polymetrix, AG to produce in its entirety an opinion of counsel provided by Todd Noah to Polymetrix (through the latter's European patent counsel) in July 2017, along with all documents and communications related to that opinion. For the reasons set forth below, the motion is denied.

## I.　Background[1]

GPT/DAK commenced this patent infringement action against Polymetrix, a Swiss corporation, in July 2016. At that time, Bühler Holding, AG (hereafter referred to

---

[1] In considering this motion, the Court reviewed, but has ultimately not relied upon, the additional declarations of Peter Schmid and Yifei Tang that were submitted *in camera*, finding that they did not add any information necessary to the Court's decision. (*See* Doc. No. 544.) Accordingly, the Court does not include any reference to the content of those declarations here.

as "Bühler") owned 35% of the shares of capital of Polymetrix. (Müller[2] Suppl. Decl. ¶ 2 [Doc. No. 541].) A year later, in or around July 2017, Bühler bought the remaining 65% of Polymetrix's shares. (*Id.*; Vögtli[3] Decl. ¶ 3 [Doc. No. 542].) Bühler then began negotiating the sale of a majority of the shares to Beijing Sanlian Hope Shin-Gosen Technical Service Co. (hereafter referred to as "Sanlian"). (Müller Suppl. Decl. ¶ 2.) Polymetrix was not directly involved in those negotiations. (*Id.*) However, Bühler and Polymetrix did discuss how the pending litigation with GPT/DAK would be handled, including whether Bühler would retain the liability for that litigation after the sale. (*Id.* ¶ 3; Vögtli Decl. ¶ 9.) Bühler's sale to Sanlian of 80% of its shares of Polymetrix was completed on March 22, 2018. (Müller Suppl. Decl. ¶ 7.) The instant motion concerns actions that took place during the period while Sanlian and Bühler were negotiating this sale.

As part of its negotiations to acquire Polymetrix, Sanlian, through its counsel at the Grandall law firm in China and the Schmid Rechtsanwälte law firm in Switzerland, inquired into the litigation between GPT/DAK and Polymetrix. (Vögtli Decl. ¶ 5.) In response, Bühler's in-house counsel directed Frank Zimmermann, a specialist in Bühler's Corporate Finance group, to forward to Sanlian's attorneys a copy of an email—hereafter

---

[2] Martin Müller is the Chief Executive Officer of Polymetrix. (Müller Initial Decl. ¶ 1 [Doc. No. 501-3].)

[3] Dieter Vögtli is the Head of Sales and Services of Bühler Group, which is wholly owned by Bühler Holding, AG. (Vögtli Decl. ¶ 1.)

referred to as the "July 5, 2017 email"—from Mark Wilming, Polymetrix's European patent counsel. (Vögtli Decl. ¶ 6.) That email is central to this dispute.

The July 5, 2017 email was written by Wilming in response to a request from "Polymetrix and [Bühler's] in-house counsel" for an email about the pending litigation between GPT/DAK and Polymetrix. (Wilming Decl. ¶ 2 [Doc. No. 543].) Wilming asked Todd Noah, Polymetrix's lead trial counsel in this case, to provide an assessment that Wilming could use in preparing his response to the request. (*Id.*) Wilming then incorporated into the July 5, 2017 email a "summary statement" based upon the assessment he received from Noah, and sent the email to Polymetrix and Bühler's counsel. (*Id* ¶ 3.) Müller states that Wilming was authorized to share his assessment with Bühler because Bühler owned 100% of Polymetrix at the time. (Müller Suppl. Decl. ¶ 3.)

At some point thereafter, "at the request of Bühler's in-house counsel," a Bühler employee, Frank Zimmermann, provided a copy of the July 5, 2017 email to Sanlian's attorneys at the Grandall law firm in China and the Schmid Rechtsanwälte law firm in Switzerland. (Vögtli Decl. ¶ 6.) Müller, Wilming, and Vögtli all state that Polymetrix did not consent or authorize Bühler to provide the July 5, 2017 email, or the content thereof, to Sanlian or Sanlian's counsel at any time during the negotiations. (Müller Suppl. Decl. ¶ 4; Vögtli Decl. ¶ 8; Wilming Decl. ¶ 4.)

Bühler relied on the risk assessment provided in the email in its negotiations with Sanlian, as Bühler and Sanlian discussed, *inter alia,* "how the litigation would be

3

handled, including whether Bühler would assume responsibility for any liability arising from the litigation." (Vögtli Decl. ¶ 9.)

On September 11, 2018, GPT/DAK's counsel downloaded three publicly available documents that had been posted online in the Shenzhen Stock Exchange database. (*E.g.*, Pls.' Ex. C West Decl. at 1 ¶¶ 2–4 [Doc. No. 488-3].) All three documents mentioned GPT/DAK's lawsuit against Polymetrix and contained the following statement (translated from Chinese): "In the opinions of the American litigation lawyer Todd A. Noah (Dergosits & Noah LLP, San Francisco) and the Swiss Patent lawyer Martin Wilming (Hepp Wenger Ryffel AG, in Wil, Switzerland) of Polymetrix AG, it is less likely that Polymetrix AG infringed any of the three patents and it is very unlikely that Polymetrix AG infringed any two of the three patents." (*Id.* at 8, 80, 237.) Polymetrix does not dispute that Sanlian's disclosure to the stock exchange was based on the "summary statement" Wilming included in the July 5, 2017 email, based on the information he received from Noah; indeed, Müller and Wilming acknowledge as much in their declarations. (*See* Müller Suppl. Decl. ¶ 5; Wilming Decl. ¶ 4.) Müller and Wilming state unequivocally, however, that Polymetrix did not know the email had been shared with Sanlian until GPT/DAK brought the issue to Noah's attention in December 2018, eight months after Sanlian's acquisition of a majority interest in Polymetrix was complete. (Müller Suppl. Decl. ¶ 5; Wilming Decl. ¶ 4.) As for Bühler, Vögtli states Bühler did not inform Polymetrix that it had shared the email with Sanlian's counsel, but that Bühler did not authorize Sanlian to disclose the contents publicly and did not realize

4

Sanlian had done so until it learned of the issue in December 2018 through this litigation. (Vögtli Decl. ¶¶ 10, 11, 13.)

GPT/DAK filed the instant motion on December 12, 2019, seeking to compel production of the opinion of counsel provided by Todd Noah to Polymetrix, as well as any communications and documents related to that opinion. [Doc. No. 485.] The Court held a hearing on the motion on January 9, 2020 and held the motion in abeyance while it requested further briefing. [*See* Doc. Nos. 529, 532.] The parties submitted additional briefing [Doc. Nos. 540–44, 551–52] and the Court took the matter under advisement on February 19, 2020 [Doc. No. 555].

**II. Discussion**

GPT/DAK seek to compel production of the entire July 5, 2017 email, as well as all documents and communications related to that opinion. (Pls.' Suppl. Reply Mem. at 1 [Doc. No. 551].) Polymetrix agrees that the disclosure of the summary statement in the filings with the Shenzhen Stock Exchange amounts to a waiver of the attorney-client privilege[4] as to the specific statement that appears in the stock exchange filings, but disagrees that it has waived the privilege over any other communications, including any other content in the July 5, 2017 email. (Def. Suppl. Mem. at 4 [Doc. No. 540].)

**A. Whether Privilege Was Waived When the Opinion Was Shared with Bühler**

The privileged communication at issue here began with an email from Todd Noah, Polymetrix's U.S. counsel, to Martin Wilming, Polymetrix's European patent counsel.

---

[4] Polymetrix does not assert that the July 5, 2017 email was protected work product.

5

(Wilming Decl. ¶ 3.) Wilming incorporated "a summary statement that [he] derived from Mr. Noah's email" into his own email later that same day, understanding that it would be shared with both Polymetrix and Bühler. (*Id.* ¶ 3.)

Polymetrix argues that it shared a common interest with Bühler, its parent corporation, when Wilming sent his confidential email. The common interest doctrine is an expansion of the attorney-client privilege to cover communications made between a client/attorney and a third party:

> If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged . . . that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997). This doctrine is "an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." *Shukh v. Seagate Tech. LLC*, 872 F. Supp. 2d 851, 855 (D. Minn. 2012). The nature of the parties' common interest must be "identical, not similar, and be legal, not solely commercial," although "an overlap of a commercial and legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest." *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996).

The Court agrees that Polymetrix and Bühler shared a common legal interest. In or around July 2017, Bühler acquired 100% of Polymetrix's shares, and remained its sole and total owner until the sale to Sanlian on March 22, 2018. (Vögtli Decl. ¶¶ 3, 14;

6

Müller Suppl. Decl. ¶¶ 2, 7.) GPT/DAK does not appear to contend otherwise. (*See, e.g.*, Pls.' Suppl. Reply Mem at 16, 23–25 (referring to the players as "Polymetrix and Bühler, on the one hand, and Sanlian, on the other hand").) Thus, the sharing of the July 5, 2017, Wilming email between Polymetrix and Bühler did not destroy the privileged status of that communication or the communications upon which it was based.

The crux of the parties' disagreement comes from what happened next. At some point, Bühler's in-house counsel directed a member of the Bühler Corporate Finance Projects team to give a copy of the July 5, 2017 Wilming email to Sanlian's attorneys at the Grandall law firm in China and the Schmid Rechtsanwälte law firm in Switzerland. (Vögtli Decl. ¶ 6.) It is undisputed that the email included the protected opinions of Polymetrix's attorneys Noah and Wilming, and that Bühler made the deliberate decision to transfer it to representatives of Sanlian, a separate corporation. GPT/DAK argue that this transfer waived any privilege attached to the email contents, since the voluntary disclosure of a communication protected by the attorney-client privilege is generally an express waiver of the privilege. *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998).

But it is a well-established component of the common interest doctrine that one party to a common enterprise cannot waive the privilege for another party. *In re Grand Jury*, 112 F.3d at 922; *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 555–56 (8th Cir. 1990); *see also* Restatement (Third) of the Law Governing Lawyers § 76, cmt. g. (2000). As a result, in cases where a member of a common interest group discloses privileged information received from another member without that member's consent, the

7

courts have held the privilege was not waived as to the member to whom the privilege belonged.  *E.g.*, *John Morrell & Co.*, 913 F.2d at 556; *see also United States v. Gonzalez*, 669 F.3d 974, 982 (9th Cir. 2012); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 817 (7th Cir. 2007).

Here, all of the information before the Court indicates the decision to disclose the opinion to Sanlian was made *by Bühler, for Bühler's benefit* in its negotiations with Sanlian—negotiations in which Polymetrix played no part—and that Polymetrix did not even know about the disclosure, let alone consent to it.  (Müller Suppl. Decl. ¶ 4; Vögtli Decl. ¶¶ 8, 12; Wilming Decl. ¶ 4.)  Significantly, GPT/DAK do not argue that Polymetrix's consent was unnecessary.  On the contrary, they state: "Polymetrix is correct that this disclosure [from Bühler to Sanlian] alone would not constitute a waiver of Polymetrix's attorney-client privilege to the extent that Polymetrix did not consent to Bühler's disclosure."  (Pls.' Suppl. Reply Mem. at 23.)  Nor does GPT/DAK advance an argument that Polymetrix gave its consent to the disclosure of the email at the time it was disclosed.

In sum, the Court finds that Polymetrix did not consent to Bühler's disclosure of the July 5, 2017 email to Sanlian prior to or at the time of the disclosure, and that absent such consent, it did not waive the attorney-client privilege as to that email, its contents, or the communications and opinions of counsel upon which it was based.  Polymetrix never "voluntarily [disclosed] a communication protected by the attorney-client privilege"— Bühler did.  *Workman*, 138 F.3d at 1263.  As a result, the Court need not reach the question of whether Bühler's disclosure to Sanlian was protected by a common interest

8

relationship between those two entities because Polymetrix did not give Bühler permission to share the document in the first place and Bühler could not waive the attorney-client privilege on Polymetrix's behalf.

GPT/DAK argue, however, that Polymetrix consented after the fact to the disclosure by failing to take action to rescind it after it learned of the stock exchange filings from GPT/DAK's counsel in December 2018. The Court turns to that argument next.

### B. Whether Polymetrix Impliedly Waived the Privilege by Failing to Take Action After It Learned of the Disclosure

GPT/DAK argue that Polymetrix impliedly consented to Bühler's disclosure of its privileged information by not attempting to claw back the July 5, 2017 email. (Pls.' Suppl. Reply Mem. at 23.) While it is true that a party can impliedly waive the privilege or consent to disclosure of privileged communications by inaction (*In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987)), the Court does not believe that doctrine is applicable here.

For purposes of this analysis, there are two disclosures at issue: Bühler's disclosure to Sanlian, and Sanlian's disclosure to the Shenzhen Stock Exchange. First, although the record does not reveal exactly when the July 5, 2017 email was provided to Sanlian, all of the evidence of record supports Polymetrix's position that it did not learn about either disclosure until December 2018, when GPT/DAK raised the issue in this litigation. (Müller Suppl. Decl. ¶ 5.) By that time, Sanlian had already completed its purchase of 80% of Polymetrix's shares and had become Polymetrix's significant-majority owner. That is, by the time Polymetrix knew the email had been transmitted to

9

Sanlian in the first place, the two companies were unquestionably united by a common legal interest. Thus, there was no reason for Polymetrix to attempt to "claw back" the email from Sanlian, its parent, in December 2018.

Likewise, there was nothing Polymetrix could have done to undo the second disclosure, from Sanlian to the Shenzhen Stock Exchange, once it became aware of it in December 2018. By that point, the summary of Todd Noah's initial assessment had already been published by the Shenzhen Stock Exchange for at least several months. (*See* Pls.' Ex. C West Decl. at 1 ¶¶ 2–4 [Doc. No. 488-3] (GPT/DAK downloaded the documents in September 2018).) GPT/DAK does not suggest, and the Court cannot conceive of, anything Polymetrix could have done to "un-publish" the information.

GPT/DAK argue that Polymetrix's acknowledgement that the statement describing Todd Noah and Martin Wilming's legal opinion is no longer privileged means that in "fairness," Polymetrix has waived the privilege as to the entire July 5, 2017 email. GPT/DAK argue that when confronted with the selective disclosure of a confidential summary statement, courts often require that the entirety of the underlying material be disclosed. *See U.S. v. Jacobs*, 117 F.3d 82, 89–91 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. U.S.*, 573 U.S. 351 (2014); *Electro Scientific Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 543–44 (N.D. Cal. 1997). But those decisions only pertain to the extent of a waiver when a waiver has occurred; they do not permit further disclosure of an opinion as to which the client never waived privilege in the first place. The Court has already concluded that Polymetrix did not waive its attorney-client privilege with regard to the July 5, 2017 email, so it need not consider what additional

information should, in fairness, be revealed. There is no indication that Polymetrix itself has ever attempted, or now proposes, to use the opinion, or any part of it (including the summary statement that was disclosed by Sanlian to the stock exchange), either in this litigation or in some other public, non-privileged forum. If that changes, the Court would likely take a very different view about waiver.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Production of Defendant's Opinion of Counsel and Related Documents and Communications [Doc. No. 485] is **DENIED**.

Dated: March 13, 2020        s/ *Hildy Bowbeer*
                             HILDY BOWBEER
                             United States Magistrate Judge