**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

GRUPO PETROTEMEX, S.A. DE C.V. and DAK AMERICAS LLC,

Plaintiffs,

v.

POLYMETRIX AG,

Defendant.

Civil Action No. 16-cv-02401 SRN-HB

**PLAINTIFFS' OBJECTIONS TO ORDER (DKT. 569) DENYING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DEFENDANT'S OPINION OF COUNSEL AND RELATED DOCUMENTS AND COMMUNICATIONS**

_____________________________________/

Plaintiffs Grupo Petrotemex, S.A. de C.V. and DAK Americas LLC (collectively "GPT/DAK") object to Magistrate Judge Bowbeer's Order (Dkt. 569) ("Order") denying GPT/DAK's motion to compel production of the legal opinion Todd Noah provided to Defendant Polymetrix AG ("Polymetrix"), and all related documents and communications. *See* Fed. R. Civ. P. 72(a); L.R. 72.2(a)(1).

The Order must be reversed because its key findings are clearly erroneous and contrary to law. *Id.*; *see also Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008). Specifically:

1. The Order contradicts itself (and Polymetrix's express admission) in its erroneous attempt to distinguish the applicable law on the summary statement waiver rule (*i.e.*, the rule that waiver of privilege as to a statement summarizing an underlying opinion automatically waives privilege on the underlying opinion itself);

2. The Order improperly conflates the summary statement waiver rule with the separate legal question of whether, after giving the summary statement waiver proper effect, the waiver should then, out of fairness, further extend to related data *beyond* the underlying opinion on the same subject matter;
3. The Order erroneously finds—without any legal basis—that Polymetrix did not need to take any action to remedy the unauthorized disclosure of its opinion to third-party Beijing Sanlian Hope Shin-Gosen Technical Service Co. ("Sanlian") after Polymetrix learned about the unauthorized disclosure, despite the unrebutted authority requiring action to remedy the unauthorized disclosure; and
4. The Order fails to even address the patent-law-specific subject matter waiver issues raised in GPT/DAK's supplemental reply brief (Dkt. 551 at 26-33).

For each of these four independent reasons, the Order is clearly erroneous and contrary to law and therefore must be reversed.

## <u>BACKGROUND</u>

There is no dispute that: (1) Polymetrix's counsel provided Polymetrix and its then-owner Bühler Holding AG ("Bühler") with a July 5, 2017 email that included "an assessment of the risks associated with the present litigation" (the "July 5, 2017 opinion email"); (2) Bühler shared this email with third-party Sanlian's counsel; and (3) Sanlian submitted a summary statement based on the July 5, 2017 opinion email to the Shenzhen Stock Exchange, making the information public. The summary statement indicated that "[i]n the opinions of the American litigation lawyer Todd A. Noah (Dergosits & Noah LLP, San Francisco) and the Swiss patent lawyer Martin Wilming (Hepp Wenger Ryffel

AG, in Wil, Switzerland) of Polymetrix AG, it is less likely that Polymetrix AG infringed any of the three patents and it is very unlikely that Polymetrix AG infringed any two of the three patents." (Dkt. 488-3, West Decl. ¶¶ 2-4, Attach. 1 at 30, Attach. 2 at 94, Attach. 3 at 95).

## STANDARD OF REVIEW

The Court must modify or set aside the Order to the extent that it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); L.R. 72.2(a)(3); *Knutson*, 254 F.R.D. at 556. "A decision is clearly erroneous when, after reviewing the entire record, a court is left with the definite and firm conviction that a mistake has been committed." *Knutson*, 254 F.R.D. at 556 (internal quotations omitted). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id*. (internal quotations omitted).

## ARGUMENT

### I. THE ORDER CONTRADICTS THE FACTS AND LAW AND IS INTERNALLY INCONSISTENT

The first ground for reversing the Order is that its only basis for distinguishing the applicable law on the effect of a summary statement waiver is unequivocally contradicted by the facts, including facts the Order acknowledges and Polymetrix admits.

As discussed below, *Electro Scientific Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 541–44 (N.D. Cal. 1997) and *U.S. v. Jacobs*, 117 F.3d 82, 89–91 (2d Cir. 1997), *abrogated on other grounds by Loughrin v. U.S.*, 134 S. Ct. 2384, 2388 n.2 (2014), hold that, once the attorney-client privilege has been waived on a summary

statement of an underlying opinion, privilege is automatically waived on the entire underlying opinion. *Importantly, this waiver as to the underlying opinion applies irrespective of the context*. For example, the waiver applies even when the disclosure of the summary statement is extrajudicial, and even when there is no indication that the privilege-holder intends to use the summary statement in the litigation. *See Electro Scientific*, 175 F.R.D. at 541-44 (finding that extrajudicial waiver as to summary statement automatically waived privilege on underlying opinion, even though there was no indication that privilege-holder intended to use summary statement in the litigation).

The Order acknowledges this law, but attempts to distinguish it on the basis that "those decisions only pertain to the extent of a waiver when a waiver has occurred; they do not permit further disclosure of an opinion as to which the client never waived privilege in the first place." Order at 10. The Order is correct that "those decisions only pertain to the extent of a waiver when a waiver has occurred"—specifically, they hold that once a waiver has occurred as to a summary statement, the waiver automatically extends to the underlying opinion upon which that summary statement was based. *Electro Scientific*, 175 F.R.D. at 541-44; *Jacobs*, 117 F.3d at 89-91. However, the Order's finding (emphasis added) that "they do not permit further disclosure of an opinion *as to which* the client never waived privilege in the first place" is circular and incorrect. The cases mandate "further disclosure of an opinion" once privilege *as to a summary statement* of the opinion is waived, regardless of whether privilege *as to the opinion itself* has already been waived in a different context. For purposes of applying the holdings of these cases, what matters is whether "a waiver has occurred" as to the

summary statement. If it has, then the cases' holdings come into play and require waiver of the complete underlying opinion.

Here, there is *no dispute* that a waiver has occurred as to the summary statement of the July 5, 2017 opinion email. The Order itself acknowledges that "Polymetrix agrees that the disclosure of the summary statement in the filings with the Shenzhen Stock Exchange *amounts to a waiver of the attorney-client privilege* as to the specific statement that appears in the stock exchange filings…." Order at 5 (emphasis added). Polymetrix likewise expressly admits that "the disclosure of the summary statement in the filings with Shenzhen Stock Exchange *is a waiver of the privilege* with respect to that statement …." Dkt. 540 at 4 (emphasis added).

Thus, because a waiver indisputably occurred here, the Order's attempt to distinguish the applicable law on the basis that "those decisions only pertain to the extent of a waiver when a waiver has occurred" is clearly erroneous. The relevant waiver for purposes of applying these cases is waiver *as to the summary statement*. Because the Order and Polymetrix acknowledge that such a waiver has occurred, the cases apply and mandate disclosure of the entire underlying opinion upon which the summary statement was based. The Order must be reversed.

## II. THE ORDER INCORRECTLY CONFLATES THE SUMMARY STATEMENT WAIVER RULE WITH THE SUBJECT MATTER WAIVER RULE

The second ground for reversing the Order is that it conflates (A) the summary statement waiver rule from *Jacobs* and *Electro Scientific* with (B) the subject matter

waiver rule, which considers "fairness" in determining how broad a waiver should extend.

The Order finds:

> "GPT/DAK argue that Polymetrix's acknowledgement that the statement describing Todd Noah and Martin Wilming's legal opinion is no longer privileged means that in 'fairness,' Polymetrix has waived the privilege as to the entire July 5, 2017 email. … The Court has already concluded that Polymetrix did not waive its attorney-client privilege with regard to the July 5, 2017 email, so it need not consider what additional information should, in fairness, be revealed."

Order at 10-11.

But "fairness" relates to how broad a subject matter waiver should extend, not to the summary statement waiver rule. *See Electro Scientific*, 175 F.R.D. at 543–44; *Jacobs*, 117 F.3d at 89–91. "Fairness" only comes into play in determining whether the waiver should extend *beyond* the underlying opinion, *i.e.*, to other documents and communications on the same subject matter. *Electro Scientific* and *Jacobs* made this distinction abundantly clear.

In *Electro Scientific*, the defendant issued a public "News Release" declaring that it "ha[d] previously carefully studied ESI's patent claims and has been advised by legal counsel that the referenced patents are invalid based upon prior patents and publications not cited to the Patent Office." *Id.* at 542. Based on this public disclosure, the court found that defendant had waived privilege "with respect to all of the communication or communications from counsel to which it adverted or on which it relied when it declared in its 'News Release' of January 7, 1997, that 'it has been advised by legal counsel that

the referenced patents are invalid ….'" *Id.* at 544. The court further explained that, if the defendant later elected to use the sentence from the "News Release" in the litigation, then, out of fairness, the waiver would become much broader and "would reach, at least, all communications about any of the subjects that were addressed in the communication or communications that underlay [defendant]'s statement …." *Id.* at 544. However, given the "extrajudicial" nature of the News Release, at least for the time being, the court limited the waiver to only "all of the communication or communications from counsel to which it adverted or on which it relied" in the News Release. *Id.* Importantly, the waiver was *not at any time* limited to just the summary statement in the News Release itself. The waiver extended to the underlying opinion upon which the statement in the News Release was based, even given the extrajudicial nature of the News Release and the defendant's apparent intent not to use the News Release in the litigation.

Similarly, in *Jacobs*, 117 F.3d at 89-91, the court found a waiver as to two underlying opinion letters from defendant's counsel after defendant told potential customers his counsel had advised him that his "Debt Elimination Program" was legal. The court found that "it seems to be the case here that Jacobs publicly disclosed a 'summary' of the two letters from his lawyer," albeit "a summary that inverted the analysis and conclusion." *Id.* at 89. The court acknowledged that defendant's disclosure of his attorney's purported conclusion to potential customers was "extrajudicial" and thus the scope of any waiver should be limited. *Id.* In fact, the court held that this extrajudicial disclosure could not "be used as a basis for invoking the 'fairness doctrine'" because that doctrine "generally applies only to those privileged communications that are

disclosed in a judicial proceeding." *Id.* Nevertheless, the court found that the underlying letters "may be admitted because their gist has been disclosed and they add literal meaning to that disclosure and correct the error in Jacobs' rendition." *Id.* at 90. "In the instant case, Jacobs (incorrectly) disclosed the substance of the two letters. His waiver, which served to waive the substance of the letters, was as effective a waiver as a direct quotation (or a copy of the letters)." *Id.* at 91. Thus, even though there was no broad subject matter waiver and the fairness doctrine did not come into play, the complete underlying letters themselves still needed to be disclosed because the summary had been disclosed.

Thus, waiver as to the summary statement automatically waives privilege on the underlying opinion, regardless of whether the privilege-holder intends to use the opinion in the litigation. The question of whether the privilege-holder intends to use the opinion in the litigation only becomes relevant at the next stage, *i.e.*, determining whether the waiver should extend *beyond* the underlying opinion to other related documents and communications on the same subject matter. Thus, the Order's analysis—finding no waiver *as to the opinion itself* based on Polymetrix's apparent intention not to use the opinion in the litigation—is clearly erroneous and contrary to law. It must be reversed.

## III. THE ORDER'S FINDING THAT WAIVER DID NOT OCCUR DESPITE POLYMETRIX'S LONG INACTION AFTER LEARNING ABOUT THE UNAUTHORIZED DISCLOSURE TO SANLIAN IS CONTRARY TO LAW

The third ground for reversing the Order is that it makes the wholly-unsupported finding that Polymetrix did not need to take any action to remedy the unauthorized

disclosure of its opinion to third-party Sanlian after Polymetrix learned about this unauthorized disclosure. Order at 9-10.

By way of background, Bühler's disclosure of the July 5, 2017 opinion email to Sanlian—coupled with Polymetrix's long inaction after learning about the disclosure—is a separate and independent basis for finding that privilege has been waived as to the opinion email. This waiver-by-inaction issue has nothing to do with the summary statement waiver rule discussed above. Privilege was waived as to the July 5, 2017 opinion email on both independent bases, and either one alone is sufficient to require production of the opinion email.

Regarding waiver-by-inaction, the Order's sole basis for finding that Polymetrix's long inaction after learning about the unauthorized disclosure to Sanlian was not a waiver is that, during the time between the unauthorized disclosure and the time that Polymetrix learned about that disclosure, Sanlian acquired an 80% ownership stake in Polymetrix. Order at 9-10. However, neither Polymetrix nor the Order cites *any legal support whatsoever* for the novel (and incorrect) theory that the unauthorized recipient of a privileged document is somehow immune from longstanding waiver-of-privilege concepts because of an intervening acquisition of an ownership stake in the privilege-holder even when the privilege-holder takes no action for more than a year to remedy the disclosure. Accordingly, the Order's finding in this regard *has no legal basis* and thus is clearly erroneous and contrary to law.

To the best of GPT/DAK's knowledge, all of the applicable law on this issue indicates that long inaction after learning about an unauthorized disclosure of a privileged

document constitutes an implied waiver. For example, in *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987), the court found that von Bulow waived his attorney-client privilege in communications with his attorney when he acquiesced in the attorney's public disclosure of the communications in the attorney's book, *Reversal of Fortune*. 828 F.2d at 101. Von Bulow argued that the waiver finding was erroneous because "only the client—and not his attorney—may waive the privilege." *Id.* at 100. The court agreed with that proposition but found that "[a] client may nonetheless by his actions impliedly waive the privilege or consent to disclosure." *Id.* at 101. "Moreover, it is the client's responsibility to insure continued confidentiality of his communications." *Id.* "[I]t is not asking too much to insist that if a client wishes to preserve the privilege under such circumstances, he must take *some affirmative action to preserve confidentiality*." *Id.* (citing *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973)) (emphasis added). Thus, the court found that "[i]n light of [von Bulow's] acquiescence in and encouragement of *Reversal of Fortune's* publication, [the lower court] properly concluded that von Bulow consented to his attorney's disclosure of his confidences and effectively waived his attorney-client privilege." *Id.*

Other courts have found implied waivers in similar circumstances. *See, e.g.*, *Baranski v. U.S.*, 2015 U.S. Dist. LEXIS 71584, at *19 (E.D. Mo. Jun. 3, 2015) ("The delay of five months between Agent Johnson's deposition and the government's assertion of privilege weighs in favor of a finding of waiver, as the government was put on notice but did not timely take action to rectify its error."); *Seger v. Ernest-Spencer Metals*, 2010 U.S. Dist. LEXIS 12754, at *18 (D. Neb. Jan. 26, 2010) (party's delay of nearly six

months after disclosures to make a privilege claim weighed in favor of waiver finding); *Clarke v. J.P. Morgan Chase & Co.*, 2009 U.S. Dist. LEXIS 30719, at *19-20 (S.D.N.Y. Apr. 20, 2009) (finding waiver where defendant's failure to raise privilege more than two months after it learned or should have learned of the privileged document's disclosure was an "inexplicably long time").

Neither the Order nor Polymetrix cites any law distinguishing these clear holdings. Indeed, GPT/DAK know of no such legal support for the novel (and incorrect) theory that Polymetrix can be excused from its inaction because Sanlian acquired an ownership stake in Polymetrix. To be clear, there is no legal basis whatsoever for concluding that the acquisition of an ownership stake has any impact on the waiver-by-inaction rule.

Moreover, even if Sanlian's intervening acquisition of an ownership stake in Polymetrix was relevant to the waiver-by-inaction issue—which it is not—it is not true that Sanlian and Polymetrix were "unquestionably united by a common legal interest" in December 2018, as the Order found without any support. *See, e.g., Teleglobe Commcn's Corp. v. BCE, Inc.*, 493 F.3d 345, 372 (3d Cir. 2007) ("it assumes too much to think that members of a corporate family necessarily have a substantially similar *legal* interest … in *all* of each other's communications. Thus, holding that parents and subsidiaries may freely share documents without implicating the disclosure rule because of a deemed community of interest stretches, we believe, the community-of-interest privilege too far."). Here, Sanlian's public filings confirm its unique (*i.e.*, not common) legal interest and that it is not liable for any damages owed to GPT/DAK by Polymetrix. Instead, "Bühler Holding shall be responsible for any losses of [Polymetrix] arising from the

aforementioned lawsuit [with GPT/DAK]." (Dkt. 488-3, West Decl. ¶¶ 2-4, Attach. 1 at 30, Attach. 2 at 94, Attach. 3 at 95). Thus, Sanlian has no legal, factual, or strategic interest in the present litigation because all of the exposure is borne by Bühler. Thus, even if the later formation of a common interest after an unauthorized disclosure could retroactively obviate the need for action to remedy the disclosure (as the Order appears to find without any support), *there is no common interest here at the relevant time*.

Accordingly, the Order's finding that Polymetrix's long inaction did not constitute a waiver is clearly erroneous and contrary to law. For this separate and independent reason, the Order must be reversed.

## IV. THE ORDER DID NOT ADDRESS THE PATENT-LAW SPECIFIC ARGUMENTS FOR A BROAD SUBJECT MATTER WAIVER HERE

The fourth ground for reversing the Order is that it fails to address the patent-law-specific subject matter waiver issues raised in GPT/DAK's supplemental reply brief (Dkt. 551 at 26-33).

As discussed above, there are at least two independent reasons why the Court should compel production of the July 5, 2017 opinion email: (1) the admitted waiver of privilege as to the Shenzhen Stock Exchange summary statement automatically waived privilege as to the underlying opinion email upon which the summary statement was based; and (2) Bühler's sharing of the opinion email with Sanlian's counsel during adversarial acquisition negotiations—and Polymetrix's acquiescence in that sharing after learning about it—waived privilege as to what was shared, *i.e.*, the opinion email. Thus, before considering whether any broader subject matter waiver should come into play, it is

worth emphasizing again that, at a minimum, the entire July 5, 2017 opinion email must be produced.

As explained in detail in GPT/DAK's supplemental reply brief (Dkt. 551 at 26-33), under the unique circumstances of this case, Polymetrix's waiver should extend to all documents and communications related to the July 5, 2017 opinion email *even though Polymetrix has indicated that it does not intend to affirmatively "use" the opinion in the litigation*. *See, e.g.*, 35 U.S.C. § 298. The Order fails to even address this critical issue. Instead, it merely finds that:

> There is no indication that Polymetrix itself has ever attempted, or now proposes, to use the opinion, or any part of it (including the summary statement that was disclosed by Sanlian to the stock exchange), either in this litigation or in some other public, non-privileged forum. If that changes, the Court would likely take a very different view about waiver.

Order at 11. But regardless of whether Polymetrix ultimately chooses to "use" the July 5, 2017 opinion email (or any other opinion), the content and significance of the opinion email are now at issue and directly relevant to GPT/DAK's inducement claim, as explained in the briefing below. Thus, a broad subject matter waiver should come into play here based on the plain language of 35 U.S.C. § 298. *Cf. Zen Design Grp., Ltd. v. Scholastic, Inc.*, 2017 U.S. Dist. LEXIS 91926, at *8 (E.D. Mich. Jun. 15, 2017) ("The language of [35 U.S.C. § 298] merely says that the *failure* of the accused infringer to produce such evidence may not be used to prove infringement. This does not foreclose the possibility that documents Defendant *produces* … end up supporting Plaintiff's

arguments on the question of [willful] infringement.") (emphasis in original). The Order's failure to even address this issue is clearly erroneous and merits reversal.

**CONCLUSION**

For the foregoing reasons, the Order must be reversed. The Court could either grant GPT/DAK's motion in its entirety, or remand the subject-matter-waiver portion to the Magistrate Judge for proper consideration.

March 27, 2020

Respectfully Submitted,

OBLON, McCLELLAND, MAIER &
NEUSTADT, L.L.P.

By: *<u>/s/ Eric W. Schweibenz</u>*
Eric W. Schweibenz *(Pro Hac Vice)*
Robert C. Mattson *(Pro Hac Vice)*
J. Derek Mason *(Pro Hac Vice)*
John F. Presper *(Pro Hac Vice)*
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000
eschweibenz@oblon.com
rmattson@oblon.com
dmason@oblon.com
jpresper@oblon.com

NORTON ROSE FULBRIGHT US LLP
Barbara J. D'Aquila, MN Bar No. 002112X
Margaret Rudolph, MN Bar No. 0393371
RBC Plaza
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
(612) 321-2800
barbara.daquila@nortonrosefulbright.com
margaret.rudolph@nortonrosefulbright.com

*Attorneys for Plaintiffs Grupo Petrotemex, S.A. de C.V. and DAK Americas LLC*