## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| GRUPO PETROTEMEX, S.A. DE C.V. and DAK AMERICAS LLC, | ) ) ) | Civil Action No. 16-cv-02401 SRN/HB |
| Plaintiffs, | ) ) | **DEFENDANT POLYMETRIX AG'S** |
| v. | ) ) | **RESPONSE TO PLAINTIFFS'** |
| | ) | **OBJECTIONS TO MAGISTRATE** |
| | ) | **JUDGE'S ORDER GRANTING** |
| POLYMETRIX AG, | ) ) | **POLYMETRIX'S EXPEDITED** |
| | ) | **MOTION PURSUANT TO** |
| Defendant. | ) | **FED.R.CIV.P. 30(b)(4)** |
| | ) | |

Defendant Polymetrix AG ("Defendant") submits this memorandum of law in response to Plaintiffs Grupo Petrotemex, S.A. de C.V. and DAK Americas LLC's ("Plaintiffs") Objections to Order on Polymetrix AG's Expedited Motion Pursuant to Fed.R.Civ.P. 30(b)(4). [ECF No. 653].

## I.    INTRODUCTION

Regrettably, Plaintiffs' objections display a complete and callous disregard for the safety and well-being of six of Defendant's representatives, who would be required to travel from Switzerland to St. Maarten, several of whom will deposed for less than 7 hours as corporate representatives in a Rule 30(b)(6) deposition.  The same disregard holds true for the safety and well-being of Defendant's counsel, who would be required

to travel from San Francisco through Miami, Florida in order to reduce total travel time to just over 12 hours instead of 20 hours plus via some other circuitous route.

Plaintiffs contend that Defendant's representation to the Magistrate Judge about the travel time from Switzerland to St. Maarten was "Unsupported (and inaccurate)" because "in reality it takes much less time to travel from Switzerland to St. Maarten, such that a person leaving on a flight from Geneva at 7:20am Swiss time with a connection in Paris will arrive at St. Maarten at 1:35pm local time on the same day." [ECF No. 655 at 3, fn 5]. But the "reality" is none of Defendant's witnesses would be traveling from Geneva, but rather from Zürich. And in the event the Court would like to take judicial notice and test Defendant's assertion regarding travel time, Defendant provides the following website, https://matrix.itasoftware.com/#view-flights:research=ZRHSXM-SXMZRH.[1]

As the Court will see from this website, which includes seven (7) web pages of flight options between Zürich and St. Maarten on the dates July 31, 2020 to August 8, 2020, the shortest travel time for the listed combination of flights is 26 hours on the outbound and 24 hours on the return. Most of the flight combinations with multiple connecting flights will require 30 hours or more of total travel time. So while Defendant has no reason to doubt the competency of Plaintiffs' travel agency, they were misinformed by Plaintiffs - the witnesses be traveling from Zürich not Geneva. Likewise, Defendant's counsel, who lives in the San Francisco Bay Area, would have to

---

[1] Similar flight information can be found on www.orbitz.com; www.expedia.com; www.travelocity.com and www.kayak.com, to name a few.

switch planes in Miami, Florida, the current epicenter of COVID-19 cases in the United States, and travel time would be over 12 hours.  *See, e.g.*,

https://matrix.itasoftware.com/#view-flights:research=SFOSXM-SXMSFO.

      But "travel time" is not the main issue here, COVID-19 is, and there is more than "a generalized fear of travel in light of the COVID-19 pandemic" as Plaintiffs so callously suggest.  [ECF No. 655 at 3].  In that regard, Defendant does not need to provide statements or declarations expressing any specific health concerns because the sole health concern of the six Defendant witnesses and Defendant's counsel is COVID-19.  The fact that Plaintiffs have criticized the Magistrate Judge for not considering "that there have been less than eighty (80) total confirmed COVID-19 infections in St. Maarten to date; only fifteen (15) deaths since March 2020; and currently one (1) confirmed COVID-19 infection on the entire island" is almost unspeakable.  [ECF No. 655 at 2].  None of the Defendant's witnesses or its counsel want to be "81," and more importantly, "16," and presumably the Magistrate Judge thoughtfully and compassionately took this into account.

      Moreover, Plaintiffs neglect to inform the Court that it is not even clear that St. Maarten is accepting flights from the United States.  https://cw.usconsulate.gov/news-events/covid-19-information/ ("**Flights to and from the United States will tentatively resume on August 1, 2020**) (emphasis on website).  And more importantly still, Defendant's counsel, and likely Plaintiffs' counsel as well, could not even meet the entry requirements of St. Maarten, which requires testing "within 72 hours prior to departure."  *See* excerpt from https://stmaartenupdates.com/ set forth below:



Stated differently, even if Defendant's counsel could get tested, which he could not because he thankfully does not meet the criteria, he would not get the results within the 72-hr window required by St. Maarten. *See* https://coronavirus.marinhhs.org/covid-19-testing-information#when.

Plaintiffs also completely ignore the fact that in addition to just "being" in St. Maarten for the depositions, Defendant's witnesses and its counsel have to actually travel to St. Maarten from Switzerland and San Francisco, respectively. So even if St. Maarten currently has no COVID-19 cases and never did, Defendant's witnesses and counsel have

to travel many hours on planes and connect though airports in locations where there are

increasing numbers of cases, including Miami, Florida, the current epicenter in the

United States of COVID-19 infections.  And then what about the in-person deposition

itself?  Holding a deposition in a room with a witness, Plaintiffs' counsel, Defendant's

counsel, a stenographer and videographer present would place everyone in the room at

risk.

      Finally, and not to belabor the point, but Plaintiffs again criticize the Magistrate

Judge's order since "the decision does not address that there is currently no self-isolation

requirement for travelers returning to Switzerland from St. Maarten."  [ECF No. 655 at

2].  Plaintiffs forget that Defendant's counsel upon returning to San Francisco will be

required to self-quarantine for 14-days.  https://www.cdc.gov/coronavirus/2019-

ncov/travelers/after-travel-precautions.html.  If Plaintiffs' counsel do not mind being self-

quarantined for 14-days, that is their choice.  But Plaintiffs cannot impose their decision

on Defendant's counsel, who chooses not to be.  As Defendant explained to the

Magistrate Judge, this is just another reason why St. Maarten is not a viable option given

the COVID-19 pandemic.

      Plaintiffs' alternative argument that "it is more than reasonable to wait a while to

see if the depositions could take place in London, Europe, or the U.S. in the not too

distant future," is essentially a non-starter because no one knows when the risks of

contracting COVID-19 will be reduced or eliminated.

## II.    ANALYSIS

Rule 30(b)(4) of the Federal Rules of Civil Procedure provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed.R.Civ.P. 30(b)(4).  Rule 30(b)(4) does not specify the standards to be considered in determining whether to grant a request for a remote deposition, therefore the decision to grant or deny such a request is left to the discretion of the Court, which must balance claims of prejudice and those of hardship, and conduct a careful weighing of the relevant facts.  *Rouviere v. Depuy Orthopaedics, Inc.*, 18-cv-4814, 2020 WL 3967665, * 3 (S.D.N.Y. July 11, 2020); *In re Broiler Chicken Antitrust Litig.*, No. 16-CV-08637, 2020 WL 3469166, at *5 (N.D. Ill. June 25, 2020).

In *Rouviere*, as case decided 12 days ago, the court faced a nearly identical issue. The plaintiffs filed a motion to compel defendant to appear in person for a deposition pursuant to Rule 30(b)(6), or, in the alternative, to extend the discovery deadline until an in-person deposition of defendant's corporate representative could be conducted.  The court denied the motion.  As aptly stated by the court in *Rouviere*:

> Conducting court proceedings remotely in the Southern District of New York has become the "new normal" since the advent of the public health emergency created by the spread of the coronavirus and COVID-19. Indeed, Chief Judge McMahon currently is conducting a bench trial via Zoom in a patent case in our Court. *See* D. Siegal, *Ferring And Serenity's SDNY Patent Trial Kicks Off Over Zoom*, Law360 (Jul. 6, 2020).
>
> So too, conducting depositions remotely is becoming the "new normal." *See In re Broiler Chicken Antitrust Litig.*, No. 16-CV-08637, 2020 WL 3469166, at *5 (N.D. Ill. June 25, 2020) ("Courts are beginning to recognize that a 'new

normal' has taken hold throughout the country in the wake of the COVID-19 pandemic that may necessitate the taking of remote depositions unless litigation is going to come to an indefinite halt until there is a cure or a vaccine for COVID-19." (citing cases)). "The more recent court decisions [permitting remote depositions during the pandemic] build on pre-pandemic case law that liberally allowed for and encouraged remote depositions as the technology for taking depositions in that way has improved significantly over time." *Id.* (citing cases).

As Defendant explains below, the balance of hardship to Defendant and potential prejudice to Plaintiffs weigh heavily in favor of the taking the depositions of Defendant's witnesses remotely by videoconference.

### A.    Hardship Imposed on Defendant if Depositions Were Held in Person

The hardship that would be caused to Defendant's witnesses and its counsel by an in-person deposition is obvious.  There is a significant health risk to Defendant's witnesses and its counsel if the deposition were to proceed in person in St. Maarten. COVID-19 "is a potentially fatal illness with the ability to spread through asymptomatic or pre-symptomatic carriers, with no approved cure, treatment, or vaccine, and unlike in other countries, new cases here are plateauing (or, in some areas, rising) rather than plummeting." *Rouviere*, 2020 WL 3967665, * 3 (quoting *Joffe v. King & Spalding LLP*, No. 17-CV-03392 (VEC), 2020 WL 3453452, at *7 (S.D.N.Y. June 24, 2020) (footnote omitted).  Thus, holding a deposition in a room with a witness, Plaintiffs' counsel, Defendant's counsel, a stenographer and a videographer present would place everyone in the room at risk.  *Rouviere*, 2020 WL 3967665, * 3.  And this risk does not even take

into account the significant risks to Defendant's witnesses and its counsel in traveling to St. Maarten as explained above.

In short, the hardship to Defendant weighs in favor of proceeding with the depositions by videoconference.

### B.   Potential Prejudice to Plaintiffs if The Depositions Were Held Remotely by Videoconference

Plaintiffs contend that they will be prejudiced if the depositions are held remotely by videoconference.  In this regard, Plaintiffs argue:

> This is a complex patent case. Polymetrix has produced thousands of pages of documents, and many of these will be used as exhibits during the depositions. GPT/DAK expect to use the full time allowed under the Federal Rules of Civil Procedure to conduct the depositions. And there can be no dispute that there is a significant possibility of technological difficulties and other practical inefficiencies with remote video depositions.

[ECF No. 655 at 5].

None of Plaintiffs' alleged bases of prejudice are valid or present here.  First, this is not a "complex patent case."  In fact, it is actually quite simple.  The only issue that this Court will need to decide by way of Defendant's anticipated motion for summary judgment of no inducement is whether Defendant induced Indorama Ventures Poland ("IVP') to send 287.6 kg  (less than $400 in value) of non-commercial test samples of polyethylene terephthalate ("PET") internally to its sister companies, AlphaPet Inc. and Auriga Polymers Inc. between 2014 and 2018.  The resolution of this issue is not "complex" at all.  Other than these non-commercial test samples, Plaintiffs have not found a single ounce of PET produced at the IVP plant that was exported to the United

States by IVP, or anyone on its behalf, after over four years of searching.  Indeed, all of the alleged shipments Plaintiffs speculated about in connection with Defendant's "failed jurisdictional challenge," proved indisputably not to be PET produced at the IVP plant.

Moreover, the fact that "many" of the "thousands of pages of documents" Defendant produced will be used as exhibits is of no moment.  As the court in *Rouviere*, noted in response to the plaintiff's similar assertions of prejudice because the deposition at issue was "document intensive" and "document laden:"

> . . . this is not an obstacle to a successful remote videoconference deposition. "[C]ourts have found that exhibits can be managed in remote depositions by sending Bates-stamped exhibits to deponents prior to the depositions or using modern videoconference technology to share documents and images quickly and conveniently." *United States for Use & Benefit of Chen v. K.O.O. Constr., Inc.*, 106 Fed. R. Serv. 3d 1383, 2020 WL 2631444, at *2 (S.D. Cal. 2020) (citing cases). Moreover, there are training and informational videos available online and vendors who host videoconferenced depositions are available to communicate with Plaintiffs' counsel to ensure that they are comfortable with the process of taking a remote deposition. *See Grano v. Sodexo Mgmt., Inc.*, No. 18-CV-01818 (GPC) (BLM), 2020 WL 1975057, at *3 (S.D. Cal. Apr. 24, 2020) ("There are numerous resources and training opportunities available throughout the legal community to assist Sodexo's counsel in the operation and utilization of the new technology.").

2020 WL 3967665, * 3.

Notably, Plaintiffs just conducted the videoconference deposition of third parties AlphaPet Inc., Auriga Polymers Inc. and StarPet Inc. on July 22, 2020 without incident. Plaintiffs easily managed the hundreds of pages of exhibits shown to the witness, thus they would be hard-pressed to argue that they would be prejudiced if they had to do it

again for the upcoming depositions of Defendant's witnesses.  The only difference

between the above-noted videoconference deposition and an in-person deposition was the

fact that Plaintiffs' counsel was not physically present in the conference room with the

witness.  But as the court in *Rouviere* noted, that is inconsequential and to conclude

otherwise would render Rule 30(b)(4) meaningless:

> The only other potential prejudice to Plaintiffs by proceeding
> remotely is that the examiner will not be physically present to
> interact with, and observe the demeanor of, the deponent. However,
> a remote deposition by its nature is not conducted face-to-face. If
> the lack of being physically present with the witness were enough
> prejudice to defeat the holding of a remote deposition, then Rule
> 30(b)(4) would be rendered meaningless. *See Robert Smalls Inc. v.
> Hamilton*, No. 09-CV-07171 (DAB) (JLC), 2010 WL 2541177, at
> *4 (S.D.N.Y. June 10, 2010) ("accepting Plaintiffs' arguments
> absent a particularized showing of prejudice 'would be tantamount
> to repealing [Fed. R. Civ. P. 30(b)(4)]' " (citation omitted)); *see also
> Usov v. Lazar*, No. 13-CV-00818, 2015 WL 5052497, at *2
> (S.D.N.Y. Aug. 25, 2015) ("remote depositions are 'a presumptively
> valid means of discovery' " (citations omitted)).

2020 WL 3967665, * 3.

In short, the lack of prejudice to Plaintiffs weighs in favor of proceeding with the

depositions by videoconference.

### C.    Plaintiffs' Alternative Proposal of "Wait-and-See" is Unworkable

Plaintiffs' alternative request to "wait a while" until the depositions can be taken

in person is unworkable.  As the court in *Rouviere* pragmatically noted, "[t]here is no

basis to believe that the current conditions that require a remote deposition to be taken

will not continue for the foreseeable future, and the Court declines to indefinitely delay

the completion of discovery in this case." 2020 WL 3967665, * 4, *quoting In re Broiler

Chicken Antitrust Litig.*, 2020 WL 3469166, at *8 ("Recent statements by public health

officials about the staying power of COVID-19 ... belie Defendants' speculation that things may be so different in the Fall as to render remote depositions in this or any other case unnecessary, or at least less likely.").

Having the depositions proceed remotely by videoconference will accomplish the just, speedy and inexpensive determination of this case. *See* Fed.R.Civ.P. 1 (Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"); *see also Sinceno v. Riverside Church in City of New York*, No. 18-CV-02156 (LJL), 2020 WL 1302053, at *1 (S.D.N.Y. Mar. 18, 2020) (authorizing remote depositions "[i]n order to protect public health while promoting the 'just, speedy, and inexpensive determination of every action and proceeding' " (citation omitted)).

## III.    CONCLUSION

Because the Magistrate Judge's Order contained no clear error and nothing contrary to law, Plaintiffs' objections should be overruled and the Order should be upheld in its entirety.

Dated:  July 23, 2020                              Respectfully Submitted,

                                                   DERGOSITS & NOAH LLP

                                              By: /s/ Todd A. Noah
                                                   Todd A. Noah (*Pro Hac Vice*)
                                                   One Embarcadero Center, Suite 350
                                                   San Francisco, CA  94111
                                                   (415) 705-6377
                                                   tnoah@dergnoah.com

FAEGRE DRINKER BIDDLE
& REATH LLP
Bernard E. Nodzon, Jr., MN Bar No.
032422X
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
bj.nodzon@faegredrinker.com

Attorneys for POLYMETRIX AG